COPY
Original Filed
FEB - 7 2023

TIMOTHY W. FITZGERALD
SPOKANE COU...

SUPERIOR COURT, STATE OF WASHINGTON, COUNTY OF SPOKANE

WENDY SCHULLER, an individual,       )
                                     )   NO. **23200516-32**
              Plaintiff,             )
                                     )   **SUMMONS**
    v.                               )
                                     )
EASTERN WASHINGTON                   )
UNIVERSITY, a regional university; and )
LYNN HICKEY, an individual,          )
                                     )
              Defendants.            )

TO THE DEFENDANTS:

A lawsuit has been started against you in the above-entitled Court by Wendy Schuller, Plaintiff. Plaintiff's claim is stated in the written Complaint, a copy of which is served upon you with this Summons.

In order to defend against this lawsuit, you must respond to the Complaint by stating your defense in writing, and by serving a copy upon the person signing this Summons within twenty (20) days after the service of this Summons, excluding the day of service, or within sixty (60) days if this Summons was served outside the State of Washington, or within forty (40) days if this Summons is served through the Insurance

SUMMONS - 1

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734

Commissioner's Office, or a default judgment may be entered against you without notice. A default judgment is one where Plaintiff is entitled to what he asks for because you have not responded. If you serve a notice of appearance on the undersigned person, you are entitled to notice before a default judgment may be entered.

You may demand that the Plaintiff file this lawsuit with the Court. If you do so, the demand must be in writing and must be served upon the person signing this Summons. Within fourteen (14) days after you serve the demand, the Plaintiff must file this lawsuit with the Court, or the service on you of this Summons and Complaint will be void.

If you wish to seek the advice of an attorney in this matter, you should do so promptly so that your written response, if any, may be served on time.

This Summons is issued pursuant to Rule 4 of the Superior Court Civil Rules of the State of Washington.

DATED this __7__ day of February, 2023.

DUNN & BLACK, P.S.

ALEXANDRIA T. DRAKE, WSBA No. 45188
ROBERT A. DUNN, WSBA No. 12089
Attorneys for Plaintiff

SUMMONS - 2

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734

COPY
Original Filed
FEB - 7 2023
TIMOTHY W. FITZGERALD
SPOKANE COUNTY CLERK

SUPERIOR COURT, STATE OF WASHINGTON, COUNTY OF SPOKANE

WENDY SCHULLER, an individual,              )
                                            )    NO. 23200516-32
                    Plaintiff,              )
                                            )    COMPLAINT
        v.                                  )
                                            )
EASTERN WASHINGTON                          )
UNIVERSITY, a regional university; and      )
LYNN HICKEY, an individual,                 )
                                            )
                    Defendants.             )
                                            )

Plaintiff Wendy Schuller, by and through her attorneys, Dunn & Black, P.S., alleges as follows:

**PARTIES, JURISDICTION AND VENUE**

1.    Plaintiff Wendy Schuller is a married individual and at all times material hereto resided in Cheney, Washington.  At times material hereto, Ms. Schuller was employed by Defendant Eastern Washington University in Cheney, Washington as the head women's basketball coach.

2.    Defendant Eastern Washington University ("EWU") is a public institution of higher education and regional university established pursuant to Title 28B of the

COMPLAINT - 1

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201

VOICE: (509) 455-8711 • FAX: (509) 455-8734

Revised Code of Washington. Upon information and belief, EWU is a recipient of federal funding.

3. Upon information and belief, Defendant Lynn Hickey is a married individual and at all times material hereto resided in Spokane County, Washington. At all times material hereto, Defendant Hickey was EWU's Athletic Director and Plaintiff Schuller's direct supervisor.

4. Plaintiff was issued a right to sue letter by the Equal Employment Opportunity Commission on January 10, 2023, less than 90 days before this Complaint was filed.

5. Plaintiff has exhausted her administrative remedies as required under Title VII.

6. Plaintiff timely filed a tort claim pursuant to RCW 4.92.100, and more than 60 days have elapsed since the claim was presented to the office of risk management in the department of enterprise services, pursuant to RCW 4.92.110, with no response.

7. Jurisdiction and venue are proper in this Court.

## FACTS

8. In June 2001, Wendy Schuller was hired to be Defendant EWU's Head Women's Basketball Coach.

9. Plaintiff Schuller thereafter held that position as an employee of EWU for nearly 20 years, working under various different Athletic Directors and EWU administrations.

COMPLAINT - 2

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201

VOICE: (509) 455-8711 • FAX: (509) 455-8734

10.    In her nearly two decades as Head Coach for EWU, Plaintiff Schuller became the all-time winningest coach in EWU women's basketball history and the 4th all-time winningest coach in Big Sky's women's basketball history.

11.    Plaintiff Schuller was named the 2010 Big Sky Coach of the Year, and coached EWU's women's basketball team to 4 post-season appearances, including the only two post-season wins in EWU's history.

12.    Plaintiff Schuller recruited and coached scores of talented players who themselves went on to receive numerous accolades on both a regional and national scale.

13.    Throughout her employment, Plaintiff Schuller consistently received positive performance reviews.

## PATTERN AND PRACTICE OF AGE AND SEX DISCRIMINATION IN EMPLOYMENT

14.    In April 2018, EWU hired Lynn Hickey as EWU's new Associate Vice President and Director of Athletics ("Athletic Director").

15.    As the Athletic Director, Defendant Hickey became Plaintiff Schuller's direct supervisor and employer.

16.    Shortly after Defendant Hickey was hired, her communications and behavior made it clear that she harbored a discriminatory animus against older employees and coaches, and more specifically against older, female coaches and employees.

17.    For example, in May 2018, Plaintiff Schuller, then 48 years old, informed Defendant Hickey that she was interested in applying for the open Senior Women's

COMPLAINT - 3

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201

VOICE: (509) 455-8711 • FAX: (509) 455-8734

Administrator position at EWU. Defendant Hickey was the hiring official for the position.

18. Plaintiff Schuller provided Defendant Hickey with a copy of her resume, and outlined the reasons she believed she would be a good fit for the position.

19. Plaintiff Schuller had been coaching at EWU for 17 years at that time. She was intimately familiar with every aspect of the work performed by the Athletic Department, routinely handling issues involving compliance, budgets, athlete welfare, public relations, etc., all skills and duties necessary to successfully serve as the Senior Women's Administrator. She had also previously served as Senior Women's Administrator for Northwestern State University before accepting employment as EWU's Head Women's Basketball Coach.

20. Plaintiff Schuller further had well-established relationships with the other coaches in EWU's Athletic Department ("Department").

21. Plaintiff Schuller outlined for Defendant Hickey her comprehensive leadership ideas to help with the growth of the Department and coaching staff should she be hired.

22. However, in spite of Plaintiff Schuller's clear qualification for the position, Defendant Hickey dismissively told her "*not to bother*" even applying for the position.

23. Instead, Defendant Hickey hired a less qualified, 39-year-old woman for the position who had no coaching experience and only 4 years' experience as a Senior Women's Administrator at a different university.

COMPLAINT - 4

24.    In doing so, Defendant Hickey and EWU passed over not only Plaintiff Schuller, but also several other older, far more qualified and experienced women who interviewed for the same position.

25.    This conduct was not unusual for Defendant Hickey, who quickly established a pattern and practice of hiring younger, less qualified employees for positions in EWU's Athletic Department, doing so over older, more experienced and better qualified current employees.

26.    The animosity exhibited by Defendant Hickey's toward Plaintiff Schuller based on her age and gender was subsequently further evidenced by Defendant Hickey's refusal to communicate with Plaintiff Schuller about matters involving the Women's Basketball Team.

27.    Instead, Defendant Hickey would frequently ignore and bypass Plaintiff Schuller while instead directing communications on issues involving conference tournaments and other matters affecting Plaintiff Schuller's team to and directly with one of Plaintiff Schuller's younger male assistant coaches.

28.    This conduct was markedly different from how Defendant Hickey communicated with EWU's male coaches, including in particular those male coaches for EWU's men's athletics teams.

## UNEQUAL PAY

29.    EWU and Defendant Hickey also discriminated against Plaintiff Schuller on the basis of sex by paying her far less than her similarly employed male counterpart,

COMPLAINT - 5

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 · FAX: (509) 455-8734

Men's Basketball Head Coach Shantay Legans, for performing work requiring equal and/or similar skill, effort, and responsibility, under similar working conditions.

30.    Plaintiff Schuller and then-head men's basketball coach Shantay Legans signed their most recent contracts within a week of each other, on April 19, 2017 and April 21, 2017, respectively.

31.    At that time, Plaintiff Schuller had over 17 years of experience as a head coach at EWU.

32.    Upon information and belief, male Coach Legans had no prior experience as a head coach.

33.    Yet, Plaintiff Schuller's contract provided for a base pay of just $110,000, which was $20,000 less than the $130,000 offered and paid to Legans.

34.    Plaintiff Schuller's contract provided for annual salary adjustments of $2,500, while male Coach Legans' contract provided for annual salary adjustments of twice that at $5,000.

35.    This pattern of disparate treatment and unequal pay is repeated with respect to the vast majority of the incentive bonuses contained in each of their respective contracts.

36.    One of the most egregious of these is the inexplicable difference in the academic performance incentives paid to Plaintiff Schuller versus male Coach Legans.

37.    Plaintiff Schuller's contract provided for her to receive a bonus in the amount of $1,000 if the women's basketball team had a cumulative GPA above 3.4, or if

COMPLAINT - 6

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734

the team's multi-year academic progress rate ("APR") was 975 or greater.

38.    By contrast, male Coach Legans' contract provided for him to receive a bonus in the amount of $5,000, if the men's basketball team achieved a cumulative GPA of 3.0 or greater, and if the team's multi-year APR was 950.

39.    Plaintiff Schuller was paid *less* for maintaining a *higher* GPA performance amongst her female athletes, than what male Coach Legans was paid for maintaining a lower GPA amongst the Men's Basketball Team.

40.    These pay inequities occurred and continued throughout the remainder of Plaintiff Schuller's employment at EWU.

## PATTERN AND PRACTICE OF SEX DISCRIMINATION IN EDUCATION AND ATHLETIC OPPORTUNITIES

41.    In addition to Defendants Hickey and EWU's pattern and practice of age and gender discrimination in employment, they also established a pattern and practice of sex discrimination in education and athletic opportunities.

42.    Defendant Hickey's discriminatory animus toward female athletes is evidenced by her own comments disparaging EWU's female athletes.

43.    More specifically, upon information and belief, Defendant Hickey has been overheard by other EWU coaches stating she "*hates girls and girl things – drama*", and that "*people should learn to come straight to her if anything happens.*"

44.    Upon information and belief, Defendant Hickey has also referred to EWU's female athletes as "*weak*" and "*whiners*", and griped that they "*complain to much.*"

COMPLAINT - 7

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201

VOICE: (509) 455-8711 · FAX: (509) 455-8734

45.    Consistent with Defendant Hickey's obvious discriminatory animus against women, she and EWU routinely held the women's sports teams to a higher and different standard when it came to hiring decisions.

46.    For example, as of 2020, EWU's Men's Basketball Team had a Director of Basketball Operations.

47.    Yet, EWU's Women's Basketball Team did not.

48.    Unlike the men's sports teams, Defendant Hickey refused to authorize or provide the Women's Basketball Team with sufficient funding to hire a Director of Basketball Operations.

49.    The men's teams were frequently permitted to fill open assistant coach positions immediately.

50.    By contrast, Defendant Hickey and EWU often forced the women's sports teams to wait to fill such open positions until shortly before or even after their seasons had commenced.

51.    This discriminatory practice deprived EWU's female athletes of the opportunity to timely develop crucial relationships with their coaching staff, negatively impacting their game-readiness.

52.    Men's teams assistant coaches who had advised they planned to seek employment elsewhere were often offered incentives and pay raises to incentivize them to remain instead at EWU.

COMPLAINT - 8

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734

53.    However, when Plaintiff Schuller and other Head Coaches for EWU's women's athletic teams requested pay raises to keep successful assistant coaches for their programs, their requests were systematically denied.

54.    Defendants Hickey and EWU also prioritized the men's sports teams, and in particular the Football Team in hiring physical conditioning and strength training coaches.

55.    EWU's men's sports teams have full-time strength training coaches, selected with input from the head coaches of those teams.

56.    By contrast, Plaintiff Schuller was given little to no say in such hiring decisions for the Women's Basketball Team, and was permitted to hire only graduate assistants, as compared to the fully qualified full-time coaches hired by EWU's men's teams.

57.    This lack of continuity and unequal access to adequate conditioning and strength training resources further undermined the success of the Women's Basketball Team, causing player vulnerability to injuries.

## UNEQUAL ACCESS AND INADEQUATE WOMEN'S ATHLETIC FACILITIES

58.    EWU also failed to provide equal facilities and equipment to its women's teams, leading to health and safety issues and resulting in additional injuries that repeatedly sidelined EWU's female athletes during basketball season.

59.    In particular, the flooring of EWU's basketball court, which is

COMPLAINT - 9

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201

VOICE: (509) 455-8711 • FAX: (509) 455-8734

predominantly used by the University's women's volleyball and basketball teams, is original to the school and over a decade past its useful lifespan. It is well known that the condition of the floor is so inadequate that many female athletes have suffered leg injuries during games and practices.

60.    Defendants Hickey and EWU were aware of this. Yet, when Plaintiff Schuller and the coaches of the other affected female teams approached Hickey to petition the school for better facilities, Coach Schuller and the other coaches were told they would have to raise the money themselves to replace the flooring.

61.    Yet, despite their many requests for guidance and assistance, Coach Schuller and the Women's Volleyball Coach were denied and refused access by Defendant Hickey to critical donors to be solicited for funds to replace the flooring.

62.    Instead, Defendant Hickey on behalf of the *Men's Football Team* personally and actively engaged in fund-raising efforts with such donors, requesting they contribute funds to build a replacement *Football* field.

63.    The Football field is used solely by the Men's Football Team. Compared to the women's basketball court, it was not significantly past its useful lifespan at the time Hickey and EWU facilitated its replacement.

64.    EWU also routinely provided the Men's Football Team with priority over its women's teams in setting times for using the University's weightlifting facilities.

65.    Notably, the late Chad Bodnar, then EWU's Women's Soccer Coach, on multiple occasions reported and sought to address this disparity issue, along with other

COMPLAINT - 10

disparities in how EWU treated its women athletes.

66.    In response, Coach Bodnar was subsequently subjected to pervasive bullying and retaliation by Defendant Hickey and Football Coach Best, such that no other EWU coaches were comfortable speaking out about similar issues for fear that they would face the same retaliatory fate.

67.    Defendant Hickey's propensity to retaliate against employees who complained of Title IX violations was further confirmed when she emailed EWU's weight room trainer to apologize to *him* for the inconvenience caused by Coach Bodnar's efforts to secure equal access for his female athletes.

68.    Defendant Hickey went on to suggest that it was time for EWU's other coaches to essentially prove their loyalty by sending her an email disavowing Coach Bodnar's complaints of unequal treatment and access for EWU's female athletes, or she would "*know who their leader is*".

69.    This clearly signaled Defendant Hickey's intent to retaliate against any employees who, like Coach Bodnar complained or even refused to deny that she and EWU denied EWU's female athletes equal access to the weight room.

70.    Indeed, days later, in direct response to Coach Bodnar's "obstinacy" in continuing to complain that his female athletes were being treated unfairly, Defendant Hickey and her staff strategized about the best way to terminate his employment.

71.    In particular, as evidenced by emails between Defendant Hickey and Assistant Athletic Directors Sarah Adams and Devon Thomas, Adams proposed that

COMPLAINT - 11

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201

VOICE: (509) 455-8711 • FAX: (509) 455-8734

Defendant Hickey could "*let him go*" pursuant to a clause in Coach Bodnar's contract purportedly allowing EWU to terminate him early "*for convenience*."

72.     Adams elaborated, "*Or you can let him go when his contract expires in three months, either way he gets three months.  Question is, what's your threshold for tolerating this behavior, and his behavior is also influencing other individuals [sic] behavior*."

73.     Upon information and belief, the following month, while Coach Bodnar was on leave to care for his dying father and address his own serious health conditions, Defendant Hickey was overheard again expressing her desire to terminate Coach Bodnar.

74.     Ultimately, Defendants followed through on their discriminatory and retaliatory plans, and deliberately failed to renew Coach Bodnar's contract despite his own stellar coaching record and the unmitigated success of the soccer program under his tutelage.

### DISPARATE BUDGET REDUCTIONS AND PRACTICES

75.     Budget reductions were also applied in a discriminatory fashion to EWU's athletic programs.

76.     In the Fall of 2020, all of EWU's sports teams were asked to take a 30% budget cut.

77.     However, this had a disproportionate impact on EWU's women's teams, which had a smaller budget than EWU's men's teams to begin with, and which as noted above, lacked access to the external/fundraised/donated dollars provided to the Men's

COMPLAINT - 12

Basketball and Football Teams.

78.    It was for this reason that the Women's Basketball Team was unable to hire a Graduate Assistant during the 2020-2021 season, even though that position was generally funded through the proceeds generated by a "guarantee game".

79.    The Women's Basketball Team played a guarantee game that season, but was not permitted to use the proceeds to fund the Graduate Assistant position.

80.    However, the Men's Basketball Team was permitted to hire both a Graduate Assistant and a Director of Operations using funds not made available to the Women's Basketball Team.

81.    Hickey further refused to allow the Women's Basketball Team to purchase new uniforms and required the team to scale back on gear that season, purportedly in order to cut costs.

82.    Yet, no such restrictions were placed on the men's sports teams.

83.    Similarly, EWU paid for meals for the Football Team the night before and the day of games.

84.    EWU refused to pay for any meals the night before any of its women's teams' games.

85.    At the height of the COVID-19 pandemic, due to Hickey's budgeting restrictions on the Women's Basketball Team, the team was often forced to drive vans to games in lieu of taking more expensive buses, which would have allowed for social distancing and thus safer transportation.

COMPLAINT - 13

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201

VOICE: (509) 455-8711 • FAX: (509) 455-8734

86.    No such restrictions were placed on EWU's Men's Football and/or Basketball Teams which had access to additional donor funds which were not made available to EWU's women's teams to help offset the effects of the budget cuts.

87.    In fact, the Women's Basketball Team was forced to take taxis and to purchase food at a grocery store during the 2021 Big Sky Conference Tournament in order to save on travel and restaurant expenses.

88.    By contrast, only weeks later, the Men's Football Team was permitted to take five expensive charter buses to transport the team and coaching staff to Moscow, Idaho for a single game.  This included one bus that departed with less than ten Football players on board, purportedly to ensure that there was adequate room for those players to socially distance and travel safely.

89.    On another occasion, when EWU's Athletic Department staff failed to provide the Women's Basketball Team sufficient funds for the first couple of trips of the 2020-2021 season due to Defendant Hickey's department mismanagement, Plaintiff Schuller was forced to pay for those trips out of her own pocket.  She even used her personal credit card to ensure that the Women's Basketball Team could check bags for free on certain airlines.

90.    Despite these unequal monetary hardships, Plaintiff Schuller and the Women's Basketball Team were excluded from discussions and decisions on matters regarding budgetary issues, and were not provided with any resources to cover budget overages.

COMPLAINT - 14

91.     This was in stark contrast to the budget transparency and overage coverage provided to the Men's Basketball and Football Teams.

92.     Similar disparities existed with respect to EWU's allocation of funding, as well as opportunities for marketing and promotion of its men's teams as compared to its women's teams.

93.     EWU's men's teams regularly benefitted from game-day promotions not provided to the women's teams.  The Men's Basketball and Football Teams also had radio shows broadcast on the regional ESPN radio station, in addition to all of their games.

94.     The women's teams did not.

95.     Several Men's Basketball games and Football games were further locally broadcast on SWX.

96.     During the 2020-2021 season, only one such women's game was broadcast.

97.     These disparities between the men's and women's sports teams hurt attendance at and interest in EWU's women's games, and sent a clear signal to EWU's female athletes and potential recruits that they were less valued than their male counterparts.

98.     The impact of Hickey's discriminatory policies and practices is clearly seen when comparing the success of the Women's Basketball Team before and after her hiring.

99.     In the nine seasons before Hickey's arrival (from 2010 to 2018), Plaintiff Schuller's Women's Basketball Team won an average of 17.7 games per year.  This included winning 10 or more Big Sky games in 8 out of those 9 years.

COMPLAINT - 15

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201

VOICE: (509) 455-8711 • FAX: (509) 455-8734

100.   In the years since Hickey was hired and commenced systematically stripping funding and resources from EWU's women's teams, the Women's Basketball Team has won on average only 7.6 games per year, and had only 17 Big Sky wins total in the 3 years Hickey has been Athletic Director.

101.   This clearly illustrates the devastating effect of providing unequal access and opportunities to women athletes at EWU, which is precisely what Title IX is intended to prevent.

## TITLE IX COMPLAINT RE. FOOTBALL PLAYER DV ALLEGATIONS

102.   The shocking and unlawful lengths to which Defendants Hickey and EWU have been willing to go in order to protect and prioritize EWU's male athletes was made appallingly clear in February 2019, when Plaintiff Schuller reported domestic violence ("DV") allegations involving one of EWU's Football players.

103.   On February 3, 2019, one of Plaintiff Schuller's Women's Basketball ("WBB") players, reported to Plaintiff Schuller that she was extremely concerned about the safety of her close friend, who was dating an EWU Football player.

104.   It was reported that the Football player at issue was alleged to have engaged in violent and/or abusive conduct toward her friend, who was also then a student at EWU.

105.   Plaintiff Schuller's player showed Plaintiff Schuller social media posts purporting to describe and evidence the alleged abuse, and a video posted online that appeared to depict the FB player throwing what looked like DVDs at her, and screaming vulgarities and threats at her while moving out of her apartment.

COMPLAINT - 16

106.    Plaintiff Schuller was deeply disturbed by these posts and the video, and advised her player that as a mandatory Title IX reporter, she was going to have to report what she had been told and shown to her supervisor, Defendant Hickey.

107.    Plaintiff Schuller then did just that.  She immediately walked down the hall to Defendant Hickey's office to report what she had been told by her player.

108.    Plaintiff Schuller showed Defendant Hickey the social media posts and pictures pertaining to the abuse allegations.

109.    This reporting was consistent with training EWU had provided to Plaintiff Schuller and the Athletic Department, instructing EWU's coaching staff to immediately report any alleged Title IX violations to their supervisor, Hickey, who would then be responsible for filing a formal Title IX report.

110.    Defendant Hickey feigned concern upon learning of the allegations against the Football player.  When Plaintiff Schuller asked if there was anything else that she needed to do as a mandatory reporter, Defendant Hickey replied, "*No, you have done what you were supposed to do*," and assured her that she, Hickey, would "*take care of it*".

111.    EWU Football Coach Aaron Best was then seen entering Hickey's office, where he was presumably summoned for the purpose of discussing the allegations made against one of his star players.

112.    However, when Plaintiff Schuller followed up with Defendant Hickey a week later to confirm that the assault allegations had been investigated and addressed properly, Hickey was visibly annoyed at her concern and inquiry.

COMPLAINT - 17

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734

113.    Defendant Hickey's response to Coach Schuller was dismissive and curt. Hickey merely vaguely responded that everything "*was fine*" and that "*it was taken care of*".

114.    Defendant Hickey then went on to disparage, defame, and blame the alleged victim, stating that she was "*difficult and a lot to handle.*"

115.    Within weeks of Plaintiff Schuller's report, EWU and Defendant Hickey launched an aggressive PR campaign, which appeared designed to rehabilitate the image of the Football player at issue.

116.    Upon information and belief, the player remained on the Football team.

117.    Defendant Hickey further publicly endorsed and recognized him, featuring him in promotions for the Football team.

118.    Upon information and belief, this was a blatant and transparent effort to insulate him from the abuse allegations reported by Plaintiff Schuller and her player.

119.    Upon information and belief, Defendants Hickey and EWU failed to appropriately investigate much less discipline the football player implicated by the abuse allegations.

120.    Upon information and belief, this was due to the fact that under conference and EWU policies, if EWU had investigated the allegations and determined there was some truth to them, they would have had no choice but to discipline and potentially expel the player at issue, thereby jeopardizing the success and prestige of the football program.

COMPLAINT - 18

121.    Upon information and belief, EWU and its Athletic Director Hickey instead callously swept the allegations under the rug, in an egregious and blatantly self-serving effort to protect and prioritize EWU's football player and team.

122.    Egregiously, Plaintiff Schuller's efforts to report and follow up on EWU's investigation into these allegations also resulted in further hostility and retaliation against her by Defendant Hickey.

123.    Plaintiff Schuller's efforts to report allegations against one of his players likewise appeared to incense Football Coach Best, who subsequently made Plaintiff Schuller a frequent target of vitriolic rants and tantrums, both publicly and privately in communications he was overheard having with Defendant Hickey.

### September 28, 2020 Title IX Audit

124.    Defendant Hickey's discriminatory and retaliatory animus against Plaintiff Schuller further intensified in late September 2020, when Plaintiff Schuller was interviewed as part of a Title IX audit of the Athletic Department.

125.    In response to the auditor's questions, Plaintiff Schuller truthfully described EWU's unequal treatment of women in its athletic programs. This included detailing the above-described issues regarding the unequal access and opportunities provided to female athletes in matters involving athletic facilities, budgets, recruiting, travel opportunities, and staffing.

126.    On September 29, 2021, the Auditor also interviewed Women's Golf Coach Brenda Howe as part of the same audit.

COMPLAINT - 19

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201

VOICE: (509) 455-8711 • FAX: (509) 455-8734

127.    Coach Howe further disclosed that Athletic Director Hickey also treated some of the older female coaches on staff in a condescending and hostile manner, specifically identifying Plaintiff Schuller as one such Coach targeted by Hickey.

128.    Coach Howe correctly informed the Auditor that the reason Plaintiff Schuller had not mentioned this during her own interview, was that she rightly feared further hostility and retaliation from Hickey.

129.    Thereafter, the Auditor sought a second interview with Plaintiff Schuller, who confirmed Hickey's hostile, discriminatory treatment of her.

130.    EWU and/or the auditor inexplicably disclosed to Defendant Hickey that Coaches Schuller and Howe had remarked on her bullying and discriminatory and retaliatory conduct.

131.    As a result, Hickey subsequently ramped up her hostile and retaliatory treatment of Plaintiff Schuller, alternately making mean and biting remarks to or about her, or giving her the "silent treatment" or "cold shoulder" by avoiding Plaintiff Schuller altogether.

132.    Egregiously, despite EWU's notice of the gender disparities in athletics and Hickey's retaliatory and discriminatory treatment of women coaches and Plaintiff Schuller in particular, the University took absolutely no action to further investigate, address, and/or remediate any of these issues.

//

//

COMPLAINT - 20

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201

VOICE: (509) 455-8711 • FAX: (509) 455-8734

## DECEMBER 2020 TITLE IX REPORT RE. FOOTBALL PLAYER RAPE COMMENTS

133.    In December, 2020, yet another incident occurred involving alleged misconduct by EWU football players.

134.    Specifically, in the locker room, Women's Basketball Team Head Trainer Wes Sohns overheard two women's basketball players discussing some repulsive comments about rape allegedly posted on Snapchat by certain EWU Football players.

135.    These comments were deeply troubling, and included statements such as "*I'm drinking my rape juice,*" and "*This is what I [wear]/[eat]/[drink] when I rape.*"

136.    Upon overhearing this disturbing discussion, Mr. Sohns and the Women's Basketball Team Assistant Trainer Alexis Gholston questioned the players about the posts they had seen.

137.    Upon information and belief, Mr. Sohns and/or Ms. Gholston then immediately reported to the EWU Title IX office what he had overheard and had been told.

138.    Upon information and belief, shortly thereafter, the women basketball players who had reported these Snapchat posts to Mr. Sohns were confronted by some EWU Football players, who had somehow discovered that they were the indirect source of the Title IX complaint.

139.    Upon information and belief, Plaintiff Schuller's players were then ominously instructed by the Football players that they "*better not say anything further*",

COMPLAINT - 21

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201

VOICE: (509) 455-8711 • FAX: (509) 455-8734

impliedly threatening them with harm or worse if they participated in the Title IX investigation.

140.    Upon information and belief, this confrontation made Plaintiff Schuller's players fearful for their own safety in the face of these thinly veiled threats.

141.    Accordingly, Plaintiff Schuller's players quickly sent letters to the Title IX office advising that they were not willing to participate in any Title IX investigation of the Snapchat posts.

142.    In the interim, however, one of Plaintiff Schuller's players called her personally to explain her reticence to participate in the investigation.

143.    Plaintiff Schuller duly reported this information to Defendant Hickey.

144.    However, upon information and belief, Hickey in utter disregard for her obligations under Title IX and to ensure the safety of EWU's female athletes, failed to take any action.

145.    In particular, upon information and belief, Hickey failed and refused to further report and/or investigate either the "*rape*" Snapchat messages or the allegations of subsequent threatening behavior by the Men's Football players.

146.    Instead, in conversations with Plaintiff Schuller Defendant Hickey rationalized that one of the Football players implicated by the allegations was transferring anyway, and again instructed Plaintiff Schuller not to be concerned about the matter.

147.    Further, Defendant Hickey dismissed the football players' shocking posts discussing and openly joking about committing sexual assault as nothing more than "*kids*"

COMPLAINT - 22

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201

VOICE: (509) 455-8711 • FAX: (509) 455-8734

just "*being immature and joking around*" on social media.

## TITLE IX/TITLE VII DISCRIMINATION AND RETALIATION AGAINST PLAINTIFF SCHULLER

148.    Following Plaintiff Schuller's above efforts to report the above Title IX issues and violations in the Athletic Department, Hickey's retaliation against Plaintiff Schuller again escalated.

149.    The monthly one-on-one meetings Plaintiff Schuller previously had with Defendant Hickey were discontinued without explanation.

150.    In further retaliation against her, Plaintiff Schuller in June 2020 was informed that she would be required to accept a pay cut and sign an amended contract to remain employed at EWU.

151.    Plaintiff Schuller was not given the option of rejecting the amendments to her contract and/or the reduction in her pay.

152.    Yet, upon information and belief, other EWU coaches were permitted to remain employed on the same terms and conditions contained in their original contracts, with full pay.

153.    Defendant Hickey also continued to obviously actively avoid Plaintiff Schuller, now engaging in such tactics refusing to talk to her and using circuitous routes through the Athletic Department in order to avoid using the hallway outside Plaintiff Schuller's office.

154.    Notably, however, notwithstanding her obvious disdain and dislike for

COMPLAINT - 23

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734

Plaintiff Schuller, Defendant Hickey never identified a single issue with Plaintiff Schuller's performance.

155.    Indeed, in the time since she was hired as Athletic Director, Defendant Hickey never once gave Plaintiff Schuller a performance evaluation, which with few exceptions Plaintiff Schuller had previously received annually.

156.    Moreover, despite Defendant Hickey's efforts to divert funding from the Women's Basketball Team to the men's teams, Plaintiff Schuller's repeated requests that Defendant Hickey at least introduce her to potential donors to make up the difference continued to be rebuffed.

157.    By contrast, Defendant Hickey routinely set up meetings between coaches for the Men's Basketball and Football Teams and potential donors and invited them to donor engagements.

## WRONGFUL TERMINATION

158.    On or about March 16, 2021, Plaintiff Schuller was notified that Hickey wanted to meet with her on March 17, 2021, to finally provide her with a "performance review". She was told that her performance review would be sent to her in advance of the meeting.

159.    However, no performance review was ever sent, and Hickey abruptly cancelled the meeting the morning it was to occur.

160.    On March 29, 2021, Defendant Hickey received the final Title IX Assessment Summary from the audit performed the preceding September.

COMPLAINT - 24

161. That Summary corroborated many of the disparities reported by Plaintiff Schuller.

162. In particular, it noted that *"Women's basketball is provided a $20/day stipend and men's basketball is provided a $30/day stipend"* and that *"Women's basketball does not provide a post-game meal, food or money and men's basketball does."*

163. The Summary further confirmed that 14 men's basketball away games were broadcast on television and/or streamed, with all home games broadcast on commercial radio, in contrast to only one women's basketball away game broadcast or streamed on television, and none of the women's basketball games broadcast on commercial radio.

164. The Summary expressly recommended that EWU *"review the administrative support for men's and women's basketball"* and noted *"It is unusual for women's basketball to not have a Director of Basketball Operations. They should have a DOBO the same as men's basketball."*

165. As these are all issues Plaintiff Schuller had previously raised and sought to address with Defendant Hickey, Defendant Hickey was well aware that it was Plaintiff Schuller who supplied EWU's Title IX consultant/auditor with information regarding these disparities.

166. The day after receiving the final report, on March 30, 2021, Hickey sent Plaintiff Schuller a text message purporting to "reschedule" her "performance review" for the following afternoon.

COMPLAINT - 25

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201

VOICE: (509) 455-8711 • FAX: (509) 455-8734

167.   Yet, unbeknownst to Plaintiff Schuller, before sending this message, Defendant Hickey had already requested and received approval from Interim President David May to terminate Plaintiff Schuller's employment, which was the real purpose for the meeting.

168.   On March 31, 2021, Plaintiff Schuller accordingly showed up for what she had been told would be a performance review.

169.   As planned, Defendant Hickey instead summarily on the spot terminated Plaintiff Schuller's two decades of employment with EWU, without warning or explanation.

170.   Defendant Hickey then handed Coach Schuller a termination letter signed by Interim President David May, stating that EWU *"is exercising its authority pursuant to Article 8, Termination of Convenience to terminate your Employment Contract as Head Coach effective March 31, 2021, end of shift."*

171.   This is precisely how Defendant Hickey and her staff had previously discussed terminating Coach Bodnar's employment when he had likewise complained that his female athletes were not receiving equal access to weight training facilities.

172.   Shortly after learning of Plaintiff Schuller's termination, on or about April 22, 2021, EWU Golf Coach Howe sent an email to the administration advising that she believed Plaintiff Schuller had been terminated as a result of *"retaliation, grudges, and poor leadership."*

COMPLAINT - 26

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734

173.    Coach Howe's email documented her shock and concern that her own complaints during the Title IX Audit about Defendant Hickey's bullying and discriminatory treatment of women coaches were shared with Hickey, and her fear that she too would face retaliation and adverse employment actions as a result.

174.    She also noted that the disclosure had "*resulted in a meeting of her [Hickey] telling me that I need to stay out of Wendy Schuller's drama, and in a way, she tried to convince me that what I'm perceiving is not really the true perception of what is happening.*"

175.    Yet, notwithstanding this transparent attempt at gaslighting, Coach Howe bravely explained that in the aftermath of Plaintiff Schuller's termination, she had decided to document her concerns specifically due to "*the firing of our Women's Basketball Coach that I believe is a result of retaliation, grudges, and poor leadership.*"

176.    Thereafter, upon information and belief, on or about June 2, 2021, Defendant Hickey emailed Interim President David May requesting to use the "*salary savings*" derived in part from the unlawful termination of Plaintiff Schuller's employment to increase the salary paid to a *male assistant* football coach.

177.    In particular, Defendant Hickey sought to increase the salary paid to assistant football coach Jase Butorac, stating "*[w]e have the funding through salary savings in that as we **lost some veteran coaches** this year **we replaced them with new staff at a lower salary**.*"

COMPLAINT - 27

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201

VOICE: (509) 455-8711 · FAX: (509) 455-8734

178.    While Defendant Hickey's email did not identify Plaintiff Schuller or former women's soccer coach Chad Bodnar by name, the plural reference to "*veteran coaches*", together with the timing of her email sent shortly after their contracts were terminated and non-renewed respectively, appears to indicate that they were at least included in the "*salary savings*" referenced.

179.    However, as discussed above, EWU did not "*lose*" Plaintiff Schuller, a 20-year veteran coach at EWU.  It unlawfully fired her based on her age, sex, and in retaliation for her efforts to report Title IX violations in EWU's Athletic Department.

180.    Similarly, EWU did not "*lose*" Coach Bodnar, but rather deliberately failed and refused to renew his contract following his efforts to report unequal treatment of his female soccer players.

181.    Thus, if and to the extent Defendants EWU and Hickey apparently sought to use Plaintiff Schuller's termination as part of the basis for increasing the salary paid to *male assistant coaches* for the *men's* football team, this further confirms that Plaintiff Schuller's sex was a substantial and/or motivating factor in her termination.

182.    Additionally, if and to the extent Defendants attempted to divert and reallocate funding from EWU's women's sports teams to its football team, this further evidences EWU's pattern and practice of providing unequal funding and access to its female athletes.

183.    As a direct result of Defendants' unlawful actions and conduct, including without limitation their failure to provide Plaintiff Schuller with equal pay, and their

COMPLAINT - 28

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201

VOICE: (509) 455-8711 • FAX: (509) 455-8734

unlawful termination of Plaintiff Schuller's employment in violation of Washington state and federal law, Plaintiff Schuller has suffered and continues to suffer damages and injury in an amount to be established at trial.

184.    Defendants' actions have further severely hampered Plaintiff Schuller's ability to obtain similar employment coaching at a top NCAA Division I institution.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**(Sex and Gender Discrimination/Retaliation in Education in Violation of Title IX, 20 U.X.C. § 1681; RCW 28B.110 <u>et seq.</u>; and RCW 49.60 <u>et seq.</u>) - EWU)**

185.    Plaintiff hereby incorporates the preceding paragraphs as if stated fully herein.

186.    Upon information and belief, Defendant EWU receives federal financial assistance, and therefore must comply with Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681, et seq. ("Title IX"), Title 34 of the Code of Federal Regulations, section 100.7, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§200e, <u>et seq.</u> ("Title VII").

187.    Title IX prohibits sex discrimination in any education program or activity receiving federal financial assistance, and as such requires that schools receiving federal funding provide effective accommodation and equal treatment to both sexes when it comes to athletic opportunities.

188.    In that regard, Title IX prohibits sex-based differences in the schedules, equipment, coaching and other factors affecting participants in athletics.

COMPLAINT - 29

189.    Title IX also prohibits retaliation against people who complain of unlawful discrimination in education programs and activities.

190.    RCW 28B.110.010 likewise recognizes that the Washington State Constitution requires equal treatment of all citizens regardless of gender, and prohibits discrimination on the basis of gender against any student in institutions of higher education. Violations of RCW 28B.110.010 constitute an unfair practice under Washington's Law Against Discrimination.

191.    Defendants treated Plaintiff Schuller disparately based on her sex in the provision of pay and opportunities, and in the provision of equipment, athletic training services, staff, funding, marketing, and facilities compared with men's athletic programs.

192.    Plaintiff Schuller reasonably believed that Defendants were engaging in unlawful discriminatory practices based on the disparity of funding, equipment, support staff, marketing, marketing coverage, access to athletic training professionals and facilities, practice and training facilities, travel and operating budgets allocated between EWU's male student athletes and female student athletes.

193.    Plaintiff also reasonably believed that the conduct alleged to have taken place on or about February 3, 2019, and in December 2020, involving EWU male football players constituted real and/or perceived Title IX violations.

194.    Plaintiff reasonably believed that in voicing her concerns about these allegations and Defendants' discriminatory treatment of Plaintiff and her female student-athletes, she was opposing an unlawful practice.

COMPLAINT - 30

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201

VOICE: (509) 455-8711 • FAX: (509) 455-8734

195.    Defendant EWU, by and through Dr. May and Defendant Hickey, thereafter took adverse employment action against Plaintiff due to her sex and gender and in retaliation for reporting sex discrimination, by terminating her contract early, and removing her as head coach of EWU's Women's Basketball Team.

196.    Thus, Defendant EWU violated Title IX and RCW 28B.110 et seq. by treating Plaintiff Schuller disparately from similarly situated male coaches, and by terminating her in retaliation for cooperating in EWU's Title IX audit and reporting what she reasonably believed to be Title IX violations in EWU's Athletic Department.

197.    As a direct and proximate result of Defendant EWU's misconduct, Plaintiff Schuller has sustained and continues to incur damages in an amount to be proven at trial, plus interest, attorneys' fees and costs.

## SECOND CAUSE OF ACTION
**(Sex and Gender Discrimination/Retaliation in Employment in Violation of Title VII of the Civil Rights Act of 1964; and the Washington Law Against Discrimination, RCW 49.60 et seq.)**

198.    Plaintiff hereby incorporates the preceding paragraphs as if stated fully herein.

199.    Plaintiff was treated disparately in her work conditions as compared to and with her male coaching counterparts throughout her employment tenure with Defendants.

200.    This includes without limitation disparate treatment in the provision of pay, mentoring, and opportunities, and in the provision of equipment, athletic training services, staff, funding, marketing, and facilities compared with men's athletic programs.

COMPLAINT - 31

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201

VOICE: (509) 455-8711 • FAX: (509) 455-8734

201.    Plaintiff Schuller further reasonably believed that Defendants were engaging in unlawful discriminatory practices based on the disparity of funding, equipment, support staff, marketing, marketing coverage, access to athletic training professionals and facilities, practice and training facilities, travel and operating budgets allocated between EWU's male student athletes and female student athletes.

202.    Plaintiff also reasonably believed that the conduct alleged to have taken place on or about February 3, 2019, and in December 2020, involving EWU male football players constituted potential Title IX violations.

203.    Plaintiff reasonably believed that in voicing her concerns about these allegations and Defendants' discriminatory treatment of Plaintiff and her female student-athletes, she was opposing an unlawful practice.

204.    In retaliation for Plaintiff Schuller reporting sex discrimination, Defendants thereafter took adverse employment action against her, by terminating her contract early, and removing her as head coach of EWU's Women's Basketball Team.

205.    The acts alleged herein constitute gender and sex discrimination in violation of Title VII and RCW 49.60 et seq.

206.    As a direct and proximate result of Defendants EWU and Hickey's misconduct, Plaintiff Schuller has sustained and continues to incur damages in an amount to be proven at trial, plus interest, attorneys' fees and costs.

//

//

COMPLAINT - 32

### THIRD CAUSE OF ACTION
**(Sex and Gender Discrimination in Compensation in Violation of the Washington Equal Pay and Opportunity Act, RCW 49.58.020 <u>et</u> <u>seq</u>.)**

207.   Plaintiff hereby incorporates the preceding paragraphs as if stated fully herein.

208.   Defendant EWU, in complicity with Defendant Hickey, paid Plaintiff Schuller less compensation than similarly situated male employees because of discrimination based on Plaintiff's sex and gender.

209.   Plaintiff Schuller was paid less compensation than similarly employed male employees, performing work requiring similar skill, effort, and responsibility, under similar working conditions, in violation of RCW 49.58.020, <u>et</u> <u>seq</u>.

210.   Upon information and belief, Defendants committed a pattern of violations as to Plaintiff and/or committed a violation of Plaintiff's rights to equal pay through application of a formal or informal policy or practice.

211.   As a direct and proximate result of Defendants' misconduct, Plaintiff Schuller has sustained and continues to incur damages in an amount to be proven at trial, plus interest, attorneys' fees and costs.

### FOURTH CAUSE OF ACTION
**(Wrongful Withholding of Wages, RCW 49.52, <u>et</u> <u>seq</u>.)**

212.   Plaintiff hereby incorporates the preceding paragraphs as if stated fully herein.

213.   Defendant EWU, in complicity with Defendant Hickey, willfully and with

COMPLAINT - 33

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201

VOICE: (509) 455-8711 • FAX: (509) 455-8734

intent to deprive Plaintiff of part of her wages, paid her a lower wage than the wage EWU is obligated to pay her.

214.   As a direct and proximate result of the Defendants' wrongful conduct, Plaintiff has suffered damages in an amount to be proven at trial, including double damages under RCW 49.52, et seq., plus interest, attorneys' fees and costs.

### FIFTH CAUSE OF ACTION
#### (Age Discrimination – RCW 49.44, et. seq.; RCW 49.60, et seq.)

215.   Plaintiff hereby incorporates the preceding paragraphs as if stated fully herein.

216.   The acts alleged herein constitute age discrimination in violation of RCW 49.44, et seq., and 49.60, et seq.

217.   Due to her age, Plaintiff Schuller is a member of a protected class.

218.   Plaintiff Schuller was subjected to adverse employment actions by Defendants, including but not limited to Defendants' termination of her employment because of her age.

219.   Throughout Plaintiff Schuller's tenure with Defendant EWU, she received positive feedback and performed more than satisfactory work as confirmed by her performance reviews.

220.   Defendants' conduct establishes that they discriminated against Plaintiff Schuller because of her age and treated her differently and unfairly as a result.

221.   Plaintiff Schuller's was wrongfully terminated from her employment with Defendant EWU in violation of RCW 49.44, et seq., and RCW 49.60, et seq.

COMPLAINT - 34

222.   As a direct and proximate result of Defendants' conduct, Plaintiff Schuller has been damaged in an amount to be proven at trial, plus interest, attorney fees and costs.

## SIXTH CAUSE OF ACTION
### (Wrongful Discharge in Violation of Public Policy)

223.   Plaintiff hereby incorporates the preceding paragraphs as if stated fully herein.

224.   Washington has a public policy interest in eliminating and prohibiting discrimination.

225.   As a direct and proximate result of Plaintiff Schuller's age, gender, and efforts to report sex discrimination and rampant Title IX violations in the Athletic Department, Defendants took adverse employment actions against her, culminating in her termination.  Defendants' actions were in contravention of Washington's public policy interest which encourages the protection of employees from unlawful discrimination.

226.   As a direct and proximate result of the Defendants' wrongful conduct, Plaintiff has suffered damages in an amount to be proven at trial, plus interest, attorney fees and costs.

## SEVENTH CAUSE OF ACTION
### (Fourteenth Amendment Violation—42 USC § 1983)

227.   Plaintiff hereby incorporates the preceding paragraphs as if stated fully herein.

228.   Defendants, while acting under the color of state and/or municipal law, maliciously, recklessly, willfully, and/or wantonly violated Plaintiff Schuller's

COMPLAINT - 35

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734

procedural and substantive due process guarantees by arbitrarily and capriciously depriving her of her Constitutionally-protected property interest, continued employment, and depriving her of equal protection under the law.

229.    Defendants willfully and/or wantonly as a pattern and practice, executed a pre-determined decision to terminate Plaintiff Schuller's employment, without affording her a meaningful hearing in front of an impartial decision-maker, in violation of her right to due process.

230.    Defendants further willfully and/or wantonly terminated Plaintiff Schuller in violation of state and federal laws prohibiting discrimination and/or retaliation on the basis of gender.

231.    Defendants' conduct constituted an official policy, adopted and implemented as a pattern and practice to permit the deprivation of Constitutionally-protected property interests in contravention of the Fourteenth Amendment to the United States Constitution and Article I, Section 7 of the Washington State Constitution. Defendants' conduct constituted a policy of deliberate indifference toward Plaintiff Wendy Schuller's rights.

232.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff Schuller suffered damages in an amount to be proven at trial.    Plaintiff's claim for damages resulting from such violation of her due process rights is made pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988.  The Defendants are liable for Plaintiff Schuller's damages, including punitive damages in amounts to be determined at trial.

COMPLAINT - 36

## EIGHTH CAUSE OF ACTION
### (Conspiracy To Violate Civil Rights- 42 USC § 1985(3))

233.   Plaintiff hereby incorporates the preceding paragraphs as if stated fully herein.

234.   Defendants, under the color of state action, in and among themselves and together with other of Defendants' employees and agents, by the actions and conduct alleged herein, engaged in a conspiracy for the purpose of preventing, hindering, or depriving Plaintiff Schuller of equal protection under the laws of the United States and the State of Washington, to her direct injury and detriment.   The Defendants, as conspirators, did so for the purpose of injuring and depriving Plaintiff Schuller of having and exercising rights and privileges as a citizen of the United States with the intention and design to exploit Plaintiff for unlawful and self-serving purposes.

235.   Defendants herein conspired for the purpose of depriving Plaintiff Schuller, either directly or indirectly, of equal protection and equal privileges and immunities afforded her under the laws of the United States and the State of Washington.   The Defendants acted as conspirators in furtherance of that conspiracy, and such acts injured Plaintiff Schuller by depriving her of her right to exercise rights and privileges afforded her as citizens.

236.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiff Schuller suffered injury and damages for which she is seeking to recover against the Defendants' jointly and severally, in amounts to be proven at the time of trial, including

COMPLAINT - 37

but not limited to, punitive damages.

## NINTH CAUSE OF ACTION
### (Infliction of Emotional Distress)

237.    Plaintiff hereby incorporates the precedent paragraphs as if stated fully herein.

238.    The Defendants' unlawful conduct towards Plaintiff was careless, unreasonable, negligent and/or intentional and was a proximate cause of the infliction of severe mental anguish and emotional distress suffered by the Plaintiff, for which she is entitled to recover damages in an amount to be established at trial.

## TENTH CAUSE OF ACTION
### (Vicarious Liability)

239.    Plaintiff hereby incorporates the preceding paragraphs as if stated fully herein.

240.    As the principal for and the employer of Lynn Hickey and former EWU president David May, Defendant EWU, pursuant to the doctrine of *respondeat superior*, is vicariously liable for the wrongful acts and omissions of Defendant Hickey and Dr. May, who were the actual agents, representatives, and employees of Defendant EWU, and who at all times were acting within the scope of their employment or within the scope of the apparent authority given to them by Defendant EWU.  Such acts were authorized or ratified by Defendant EWU.

241.    Such acts were the proximate cause of Plaintiff's injuries and damages for which she is seeking recovery in an amount to be proven at the time of trial.

COMPLAINT - 38

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201

VOICE: (509) 455-8711 • FAX: (509) 455-8734

## ELEVENTH CAUSE OF ACTION
### (Breach of Contract)

242.    Plaintiff hereby incorporates the preceding paragraphs as if stated fully herein.

243.    As alleged herein, the parties entered into an enforceable contract for Wendy Schuller to be employed by Defendant EWU.

244.    Plaintiff Schuller performed all of her obligations under the contracts.

245.    Defendant EWU breached its express and implied obligations, including the implied covenant of good faith and fair dealing.

246.    Defendant EWU's breaches have proximately caused Plaintiff Schuller damages in an amount to be proven at trial, plus incidental and consequential damages as provided by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Wendy Schuller prays for relief as follows:

1.    For judgment against Defendants Eastern Washington University and Lynn Hickey in amounts to be proven at trial;

2.    For damages pursuant to applicable law and 42 U.S.C. § 1983 and 42 U.S.C. § 1988, including an award of punitive damages;

3.    For damages for emotional distress;

4.    For compensatory damages, including without limitation, but not limited to all lost wages, front pay, and employment-related benefits;

COMPLAINT - 39

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201

VOICE: (509) 455-8711 • FAX: (509) 455-8734

5.    For statutory and/or liquidated damages equal to the actual damages pursuant to RCW 49.58.070, and for double damages pursuant to RCW 49.52.070;

6.    For prejudgment and post-judgment interest as allowed by law;

7.    For attorney fees and costs as pursuant to RCW 49.58.020 and .070, RCW 49.60, et seq., 42 U.S.C. § 1988, and other applicable law;

8.    For an award of all taxes and taxable consequences to be incurred from any damages paid to Plaintiff; and

9.    For such other relief as this Court deems just and equitable.

DATED this ___7___ day of February, 2023.

DUNN & BLACK, P.S.

ALEXANDRIA T. DRAKE, WSBA No. 45188
ROBERT A. DUNN, WSBA No. 12089
Attorneys for Plaintiff

COMPLAINT - 40

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201

VOICE: (509) 455-8711 • FAX: (509) 455-8734

**STANDARD TORT CLAIM FORM**
General Liability Claim Form #SF 210

Pursuant to Chapter 4.92 RCW, this form is for filing a tort claim
against the state of Washington.  Some of the information requested
on this form is required by RCW 4.92.100 and may be subject to public
disclosure.

For Official Use Only

**PLEASE TYPE OR PRINT CLEARLY IN INK**

**Mail or deliver**        Department of Enterprise Services
**original claim to**      Office of Risk Management

1500 Jefferson Street SE
MS 41466
Olympia, Washington  98504-1466
Fax: 360-407-8022

Business Hours: Monday – Friday 8:00 a.m. – 5:00 p.m.
Closed on weekends and official state holidays.

1.  Claimant's name:  Schuller                Wendy                          01/05/1970
                      Last name               First        Middle           Date of birth (mm/dd/yyyy)

2.  Inmate DOC number (if applicable): N/A

3.  Current residential address: 2200 Sunrise Drive, Cheney, WA 99004

4.  Mailing address (if different): c/o Dunn & Black, P.S., 111 N. Post, Ste. 300, Spokane, WA 99201

5.  Residential address at the time of the incident: same
    (if different from current address)

6.  Claimant's daytime telephone number: _____    (509) 455-8711
                                          Home                   Business or Cell

7.  Claimant's e-mail address: adrake@dunnandblack.com

8.  Date of the incident: 03/31/2021      Time: 3:00  [ ] a.m.  [X] p.m. (check one)
                          (mm/dd/yyyy)

9.  If the incident occurred over a period of time, date of first and last occurrences:

    from  April 2018                      Time: _____  [ ] a.m.  [ ] p.m.
          (mm/dd/yyyy)                          (mm/dd/yyyy)

    to  03/31/2021                        Time: _____  [ ] a.m.  [ ] p.m.
        (mm/dd/yyyy)                            (mm/dd/yyyy)

10. Location of incident:  Washington, Spokane County    Cheney         Eastern Washington University
                           State and county        City, if applicable      Place where occurred

# APPENDIX A

11. If the incident occurred on a street or highway:

N/A

| Name of street or highway | Milepost number | At the intersection with or nearest intersecting street |

12. State agency or department alleged responsible for damage/injury:

Eastern Washington University

13. Names, addresses and telephone numbers of all persons involved in or witness to this incident:

Wendy Schuller; Lynn Hickey; Brenda Howe; Chad Bodnar; various Eastern Washington University students and

employees

14. Names, addresses and telephone numbers of all state employees having knowledge about this incident:

See above and attached Appendix A

15. Names, addresses and telephone numbers of all individuals not already identified in #13 and #14 above that have knowledge regarding the liability issues involved in this incident, or knowledge of the Claimant's resulting damages. Please include a brief description as to the nature and extent of each person's knowledge. Attach additional sheets if necessary.

See attached.

16. Describe the cause of the injury or damages. Explain the extent of property loss or medical, physical or mental injuries. Attach additional sheets if necessary.

See attached.

17. Has this incident been reported to law enforcement, safety or security personnel? If so, when and to whom? Please attach a copy of the report or contact information.

N/A

_____

_____

18. Names, addresses and telephone numbers of treating medical providers. Attach copies of all medical reports and billings.

N/A

_____

_____

_____

_____

_____

_____

19. Please attach documents which support the allegations of the claim.

20. I claim damages from the state of Washington in the sum of $ <u>Not less than $5,000,000</u>

This Claim form must be signed by the Claimant, a person holding a written power of attorney from the Claimant, by the attorney in fact for the Claimant, by an attorney admitted to practice in Washington State on the Claimant's behalf, or by a court-approved guardian or guardian ad litem on behalf of the Claimant.

I declare under penalty of perjury under the laws of the state of Washington that the foregoing is true and correct.


_____    _____
***Signature of Claimant***                  ***Date and place (residential address, city and county)***


_____    06/18/2021; Dunn & Black, P.S., 111 N. Post, Ste. 300, Spokane, WA 99206
***Signature of Representative***            ***Date and place (residential address, city and county)***


Robert A. Dunn                               WSBA No. 12089
_____    _____
***Print Name of Representative***           ***Bar Number (if applicable)***