1   ROBERT A. DUNN, WSBA No 12089
2   ALEXANDRIA T. DRAKE, WSBA No. 45188
    DUNN & BLACK, P.S.
3   111 North Post, Suite 300
    Spokane, WA 99201-0907
4   Telephone:  (509) 455-8711
    Facsimile:  (509) 455-8734
5   Attorneys for Plaintiff
6

7                IN THE UNITED STATES DISTRICT COURT
                 EASTERN DISTRICT OF WASHINGTON
8

9   WENDY SCHULLER, an individual,    )
                                      )   NO. 2:23-cv-00059
10                      Plaintiff,    )
                                      )   **JOINT STATEMENT OF**
11          v.                        )   **UNCONTROVERTED FACTS**
                                      )
12  EASTERN WASHINGTON               )
    UNIVERSITY, a regional university; )
13  and LYNN HICKEY, an individual,   )
                                      )
14                      Defendants.   )
                                      )
15

16          Pursuant to Plaintiff's Statement of Additional and Disputed Facts (ECF No.

17  57), Plaintiff does not dispute the factual allegations set forth in paragraphs 1-8 of

18  Defendants' Statement of Material Facts Not in Dispute (ECF No. 47). Likewise,
19
    pursuant to Defendants' Reply Statement of Material Facts Not in Dispute (ECF No.
20
21  69), Defendants do not dispute the facts set forth in the following paragraphs of

22  Plaintiff's Statement of Additional and Disputed Facts (ECF No. 57): 1-7, 9, 11, 13-
23
    15, 17-24, 27-29, 33-40, 42-47, 50, 55-56, 62-64, 66, 71-73, 75-77, 79, 83-84, 86-
24
25  88, 90-91, 94-102, 105-108, 111, 113-116, 118, 122, 130, 131, 133-139, 143-144,

26  JOINT STATEMENT OF
    UNCONTROVERTED FACTS - 1

151-152, 155-159, 163-166, 168-170, 173-180, 182-184, 189, 193, 196-198, 200, 202, 204-205, 208, 210-215, 217, 220-224, 227-229, 231-234, 237-240, 242, 244-245, 249-251, 256-265, 271, 273-278, 280-281, 283, 285, 288-289, and 293.

Therefore, the parties, by and through counsel, set forth the below Joint Statement of Uncontroverted Facts:

1.    Wendy Schuller first began playing basketball at the age of 5.  ECF No. 57 at ¶ 1.

2.    In 1992, Coach Schuller was hired as Graduate Assistant for the Women's Basketball team at Northwestern State University ("NSU").  Id., at ¶ 2.

3.    In 1993, Coach Schuller graduated with her Master's from NSU.  She then was hired for a permanent full-time position as an Assistant Coach for NSU's Women's Basketball Team.  Id., at ¶ 3.

4.    Beginning in approximately 1996, Coach Schuller also served as the Senior Woman Administrator ("SWA") for NSU, in addition to her duties as Assistant Coach. Id., at ¶ 4.

5.    In 1998, Coach Schuller was promoted from Assistant Coach to Associate Head Coach at NSU. Id.  Coach Schuller continued to serve as the SWA for NSU.  Id., at ¶ 5.

6.    In June 2001, Coach Schuller was hired to be Defendant Eastern Washington University's ("EWU") Head Women's Basketball Coach.  Id., at ¶ 6;

JOINT STATEMENT OF
UNCONTROVERTED FACTS - 2

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734

ECF No. 47 at ¶ 1.

7.     Coach Schuller thereafter held that position as an employee of EWU for approximately 20 years, working under various different Athletic Directors and University administrations.  ECF No. 57 at ¶ 7.

8.     On March 31, 2021, Ms. Schuller was terminated from her position as Head Coach for EWU Women's Basketball Team.  ECF No. 47 at ¶ 7.

9.     This occurred after Coach Schuller had reported Title IX issues affecting EWU's athletic programs to a Title IX auditor retained by EWU in September 2020.  It was also after she reported two Title IX issues involving EWU Football players, which occurred in February 2019 and December 2020, respectively.  ECF No. 57 at ¶ 9.

10.     Coach Schuller was 51 years old at the time she was fired, and had by then devoted 46 of those 51 years to playing and/or coaching women's basketball.  Id., at ¶ 11.

11.     At the time of her termination, Ms. Schuller was offered a six-month severance check pursuant to the Termination for Convenience Clause in her contract, which she refused. ECF No. 47 at ¶ 8.

12.     In her nearly two decades as Head Coach for EWU, Coach Schuller became the all-time winningest coach in EWU women's basketball history and the 4th all-time winningest coach in Big Sky women's basketball history.  ECF No. 57

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734

at ¶ 13.

13.    Coach Schuller was named the 2010 Big Sky Coach of the Year, and coached EWU's women's basketball team to four post-season appearances, including the only two post-season wins in the school's history. Id., at ¶ 14.

14.    Coach Schuller recruited and coached scores of talented players who themselves went on to receive numerous accolades on a regional and indeed national scale. Id., at ¶ 15.

15.    On 4/18/17, Coach Schuller's last performance review was provided to her by then-Athletic Director William Chaves. Id., at ¶ 17.

16.    That evaluation noted that the EWU Eagles were the only team to advance to the semifinal round of the Big Sky Tournament in each of the preceding three seasons. It also acknowledged that Coach Schuller's program was "nationally recognized for their performance in the classroom on numerous occasions." Id., at ¶ 18.

17.    Coach Schuller's 4/18/17 Eval confirmed that she met or exceeded expectations in every category, including Competitive Results in which she was rated "Exceeds Expectations". Id., at ¶ 19.

18.    Indeed, Defendant Hickey's own declaration confirms that between 2011 and the end of the 2017-18 season, which ended shortly after Hickey was hired in February 2018, the Women's Basketball Team finished in the top three teams in

JOINT STATEMENT OF
UNCONTROVERTED FACTS - 4

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734

the conference all but one year, when the team finished in fourth place.  ECF No. 48 at 4.  In fact, the team had finished first in the conference for the 2009-10 season, followed by a 6th place finish in 2010-11, and a strong return to 3rd place by the following year, 2011-12.  Id., at ¶ 20.

19.    It was only after Defendant Hickey became Athletic Director in 2018, that the team finished in 6th, 10th, and 9th place for the 2018-19, 2019-20, and 2020-21 seasons, respectively.  Notably, two of those years were during the Covid 19 pandemic, at a time when the Athletic Department was besieged by difficulties as discussed further below.  Id., at ¶ 21.

20.    During Plaintiff's tenure as EWU Women's Basketball Head Coach, the Women's Basketball Team's record was as follows:

| Season | Overall | Conference | Standing | Postseason |
|--------|---------|-----------|----------|-----------|
| **Eastern Washington** (*Big Sky*) (2001–present) | | | | |
| 01–02 | 11–18 | 6–8 | 5th | |
| 02–03 | 17–12 | 7–7 | 5th | |
| 03–04 | 13–16 | 5–9 | 6th | |
| 04–05 | 16–12 | 8–6 | 4th | |
| 05–06 | 13–15 | 7–7 | T–4th | |
| 06–07 | 10–19 | 5–11 | 7th | |
| 07–08 | 4–25 | 1–15 | 9th | |
| 08–09 | 10–19 | 5–11 | 7th | |
| 09–10 | 19–12 | 12–4 | 1st | WNIT 1st Round |
| 10–11 | 13–18 | 8–8 | 6th | |
| 11–12 | 16–14 | 10–6 | 3rd | |
| 12–13 | 19–13 | 14–6 | 3rd | WNIT 1st Round |
| 13–14 | 16–14 | 12–8 | 4th | |
| 14–15 | 21–12 | 12–6 | T–3rd | WNIT 2nd Round |
| 15–16 | 20–12 | 13–5 | 2nd | |
| 16–17 | 19–14 | 12–6 | 4th | WBI 2nd Round |

JOINT STATEMENT OF
UNCONTROVERTED FACTS - 5

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734

| 17–18 | 17–14 | 12–6 | 4th |
| 18–19 | 13–20 | 9–11 | 6th |
| 19–20 | 4–26 | 3–17 | 10th |
| 20–21 | 6–17 | 5–12 | 9th |
| **Eastern Washington:** | 277–322 | | 166–169 |
| | (.462) | | (.496) |

ECF No. 47, at ¶ 3.

21.    On 4/19/17, Coach Schuller again signed a new contract with EWU, formally renewing her employment as the Head Women's Basketball Coach.  The contract was for a definite five-year term, effective 5/1/2017 through 4/30/2022, "unless terminated sooner in accordance with [EWU Policy] 406-01 – Administrative Employees and/or in accordance with the provisions of this contract."  ECF No. 57 at ¶ 22; ECF No. 47 at ¶ 2.

22.    In that regard, Coach Schuller's contract contained both a "Termination by University with Cause" clause, and a "Termination for Convenience" clause. ECF No. 57 at ¶ 23.   The Termination for Cause provision specifically limited the University's right to terminate Coach Schuller's contract prior to expiration to circumstances giving rise to "just cause". Id. Those circumstances are specifically defined in the contract, and include "failure to perform job duties assigned by the Director or the President," "change of the program in which the administrative position inheres", or "violation of those duties outlined in this contract."  Id.

23.    The latter "Termination for Convenience" provision states that Defendant may terminate Coach Schuller without cause, "at the discretion of the

JOINT STATEMENT OF
UNCONTROVERTED FACTS - 6

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734

Director, with approval of the President". Unlike the Termination for Cause provision, the Termination for Convenience clause is silent as to whether it can be used to terminate a Coach prior to expiration of the contract. However, notably, EWU Policy 406-1 specifically confirms that unlike other exempt appointments, "contracted employees" are **not** "at-will" employees. Paragraph 2-5 further confirms that only "*exempt at-will*" employees can be terminated "at any time by the appointing authority or designee, with or without cause." Id., at ¶ 24.

24. Coach Schuller subsequently observed that prior to her termination, no EWU coaches were terminated using the termination for convenience clause. Id., at ¶ 27.

25. To Coach Schuller's knowledge, EWU certainly never used the "Termination for Convenience" clause as a means of terminating any other coaches' contracts due to purported issues with the teams' win/loss record, player transfers, or general performance. Id., at ¶ 28.

26. Instead, in the 20+ years Coach Schuller coached Women's Basketball, the practice at both EWU and NSU was to communicate feedback and expectations via annual performance appraisals. Id., at ¶ 29.

27. On 2/9/2018, EWU hired Lynn Hickey as the Interim Athletic Director. Id., at ¶ 33.

28. On 4/25/2018, the position became permanent when EWU formally

JOINT STATEMENT OF
UNCONTROVERTED FACTS - 7

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734

appointed Lynn Hickey to be EWU's Athletic Director. Id., at ¶ 34.

29.    Prior to commencing employment as EWU's Athletic Director, Defendant Hickey was the Athletic Director for the University of Texas San Antonio for 18 years, from the fall of 1999 to the fall of 2017.  Id., at ¶ 35.

30.    From approximately 1994 to the fall of 1999, Defendant Hickey was the Senior Associate Athletic Director for Texas A&M University.  Before that, Defendant Hickey served as Texas A&M's head Women's Basketball Coach and Associate Athletic Director / Senior Woman Administrator. Id., at ¶ 36.

31.    Defendant Hickey testified that in the 45 years she was employed as an administrator in college athletics, she only recalled ever terminating five coaches pursuant to a "Termination for Convenience Clause" prior to Coach Schuller's termination in March 31, 2021. Id., at ¶ 37.

32.    Of those five coaches that Defendant Hickey purportedly fired "for convenience" prior to March 31, 2021, three were individuals for whom Defendant Hickey believed there was just cause for termination.  Id., at ¶ 38.  Defendant Hickey used the "Termination for Convenience" clause because she lacked adequate documentation to justify a "for cause termination".  Id.

33.    Upon becoming EWU's Athletic Director, Defendant Hickey became Coach Schuller's direct supervisor, replacing former Athletic Director William "Bill" Chaves. Id., at ¶ 39.

JOINT STATEMENT OF
UNCONTROVERTED FACTS - 8

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734

34.    Initially, Coach Schuller was ecstatic about EWU's decision to hire Hickey, as she was a former Head Women's Basketball Coach herself, and considered to be a trail-blazer in college athletics. Coach Schuller warmly welcomed Ms. Hickey to EWU, and even helped her go house-hunting in an effort to help her settle in and feel at home. Id., at ¶ 40.

35.    In May 2018, Coach Schuller, then 48 years old, informed Defendant Hickey that she was interested in applying for the open Senior Woman Administrator position at EWU.  The Senior Woman Administrator is the highest-ranking female involved in the management of an institution's intercollegiate athletics program, other than the Athletic Director herself, if a woman.  Id., at ¶ 42.

36.    Coach Schuller provided a copy of her resume to Hickey, and prepared a short presentation outlining the reasons she believed she would be a good fit for the position. Id., at ¶ 43.

37.    Coach Schuller had been coaching at EWU for 17 years at that time. Id., at ¶ 40.  She was intimately familiar with every aspect of the work performed by the Athletic Department, routinely handling issues involving compliance, budgets, athlete welfare, public relations, etc. – all skills and duties necessary to succeed as the Senior Woman Administrator.  Id., at ¶ 44.

38.    Coach Schuller had also previously served as SWA for Northwestern State University, another Division I University, while still coaching and before

JOINT STATEMENT OF
UNCONTROVERTED FACTS - 9

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734

accepting employment as EWU's Head Women's Basketball Coach.  <u>Id</u>., at ¶ 45.

39.    Coach Schuller had well-established relationships with the other coaches in EWU's Athletic Department, having worked with and mentored many of them for many years already. <u>Id</u>., at ¶ 46.

40.    Coach Schuller outlined for Defendant Hickey her comprehensive leadership ideas to help with the growth of the EWU Department, and the coaching staff should she be hired. <u>Id</u>., at ¶ 47.

41.    Defendant Hickey informed Plaintiff Schuller she was welcome to apply.  <u>Id</u>., at ¶ 50.

42.    Sarah Adams was ultimately hired for the position.  At the time she was hired, Ms. Adams had no coaching experience and 4 years' experience as a Senior Woman Administrator at a different university. <u>Id</u>., at ¶ 55.

*43*.    In hiring Ms. Adams, Defendants Hickey and EWU did not hire Coach Schuller, or several other older, qualified and experienced women who interviewed for the same position. <u>Id</u>., at ¶ 56.

44.    Defendants Hickey and EWU also treated Eastern's female athletes differently than its male athletes in resources and athletic opportunities.  <u>Id</u>., at ¶ 62.

45.    As of 2020, EWU's Men's Basketball Team had a designated Director of Basketball Operations.  <u>Id</u>., at ¶ 63.

46.    EWU's Women's Basketball Team did not.  <u>Id</u>., at ¶ 64.

JOINT STATEMENT OF
UNCONTROVERTED FACTS - 10

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734

47.    The men's teams were frequently permitted to fill open assistant coach positions immediately.  Id., at ¶ 66.

48.    Defendants Hickey and EWU prioritized the men's sports teams and the Football Team in particular with the hiring of physical conditioning and strength coaches.  Id., at ¶ 71.

49.    EWU's men's sports teams had full-time strength training coaches, selected with input from the head coaches of those teams.  Id., at ¶ 72.

50.    Coach Schuller was given little to no say in such hiring decisions for the Women's Basketball Team, and was permitted to hire only graduate assistants as compared to the fully qualified full-time coaches hired by EWU's men's teams.  Id., at ¶ 73.

51.    EWU also failed to provide equal facilities and equipment to its women's teams.

52.     This contributed to health and safety issues and injuries that repeatedly sidelined EWU's female athletes during the basketball seasons.  Id., at ¶ 75.

53.    The floor of EWU's basketball court, which is predominantly used by the University's women's volleyball and basketball teams is original to the school and over a decade past its useful lifespan.  Id., at ¶ 76.  It is well known that the condition of the floor is so inadequate that many female athletes suffered leg injuries during games and practices as a result.  Id.

JOINT STATEMENT OF
UNCONTROVERTED FACTS - 11

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734

54.     Defendants Hickey and EWU were aware of the condition of the gym floor and the safety issues that were allegedly implicated. Id., at ¶ 77.  When Coach Schuller and the coaches of the other affected teams approached Defendant Hickey to petition the school for better facilities, they were told they would need to raise the money themselves to replace the floor.  Id.

55.     By contrast, Defendant Hickey personally and actively engaged in fund-raising efforts with such donors on behalf of the Men's Football Team, requesting that they contribute funds to build a replacement Football field which was in better condition than the basketball court used by mostly women's teams.  Id., at ¶ 79.

56.     In response to an email from Head Women's Soccer Coach Bodnar, Defendant Hickey emailed EWU's weight room trainer to apologize to him for the inconvenience caused by Coach Bodnar's efforts to secure equal access for his female athletes.  Id., at ¶ 83.

57.     In that same email, Defendant Hickey stated "It is time the other programs step up and either deny this in another email or we know who their leader is." Id., at ¶ 84.

58.     In emails between Defendant Hickey and SWA Sarah Adams and Deputy Athletic Director Devon Thomas, Adams proposed that Defendant Hickey could "let him go" pursuant to the "Termination for Convenience Clause" in Coach

JOINT STATEMENT OF
UNCONTROVERTED FACTS - 12

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734

Bodnar's contract.  Id., at ¶ 86.

59.    Alternately, SWA Adams elaborated, "Or you can let him go when his contract expires in three months, either way he gets three months.  Question is, what's your threshold for tolerating this behavior, and his behavior is also influencing other individuals [sic] behavior." Id., at ¶ 87.

60.    Ultimately, that is exactly what occurred.  Id., at ¶ 88.  Shortly after Coach Schuller was terminated on 3/31/21, purportedly pursuant to the "termination for convenience" in her contract, following her undisputed efforts to report similar Title IX issues, EWU failed to renew Coach Bodnar's contract, despite the unmitigated success of the. soccer team under his tutelage.  Id.

61.    In the Fall of 2020, all of EWU's sports teams were asked to take a 30% budget cut.  Id., at ¶ 90.

62.    This had a disproportionate impact on EWU's women's teams, which had a smaller budget than EWU's men's teams to begin with, and which lacked access to the external/fundraised/donated dollars provided to the Men's Basketball and Football Teams. Id., at ¶ 91.

63.    The Women's Basketball Team played a guarantee game that season, yet was not permitted to use the proceeds to fund the Graduate Assistant position that year.  Id., at ¶ 94.

64.    The same year, the Men's Basketball Team was permitted to hire both

JOINT STATEMENT OF
UNCONTROVERTED FACTS - 13

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734

a Graduate Assistant and a Director of Operations prior to the start of their season using funds not made available to the Women's Basketball Team. Id., at ¶ 95.

65.    Hickey further refused to allow the Women's Basketball Team to purchase new uniforms and required the team to scale back on gear that season, in order to cut costs. This was not the case with some of the men's sports teams. Id., at ¶ 96. EWU paid for meals for the Football Team the night before and the day of games. Id.

66.    EWU did not pay for any meals the night before any of its women's teams' games. Id., at ¶ 97.

67.    At the height of the COVID-19 pandemic, due to budget restrictions imposed on the Women's Basketball Team, the team drove vans to games in lieu of taking buses, precluding effective social distancing that would have made travel safer. Id., at ¶ 98.

68.    No such restrictions were placed on EWU's Men's Football and/or Basketball Teams, which had additional donor funds not made available to EWU's women's teams to help offset the effects of the budget cuts. Id., at ¶ 99.

69.    The Women's Basketball Team was forced to take taxis and purchase food at a grocery store during the 2021 Big Sky Conference Tournament in order to save on travel and restaurant expenses. Id., at ¶ 100.

70.    Weeks later, the Men's Football Team took five charter buses to

JOINT STATEMENT OF
UNCONTROVERTED FACTS - 14

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734

transport the team and coaching staff to Moscow, Idaho for a single game. Id., at ¶ 101. This included one bus that departed with less than ten Football players on board, allegedly to ensure that there was adequate room for those players to socially distance and travel safely. Id.

71. On another occasion, due to insufficient funds being provided to the Women's Basketball Team early in the 2020-2021 season, Coach Schuller had no choice but to advance the funds to pay for trips out of her own pocket, and incur the expense until later reimbursed. Id., at ¶ 102. She used her personal credit card to ensure that the Women's Basketball Team could check bags for free on certain airlines. Id.

72. Disparities existed with respect to EWU's allocation of funding and opportunities for marketing and promotion of its men's teams as compared to its women's teams. Id., at ¶ 105.

73. EWU's men's teams benefitted from game-day promotions not provided to the women's teams. Id., at ¶ 106. The Men's Basketball and Football Teams had radio shows broadcast on the regional ESPN radio station, in addition to all of their games; the women's teams did not. Id.

74. Men's Basketball games and Football games were often locally broadcast on SWX. Id., at ¶ 107.

75. During the 2020-2021 season, only one such women's game was

JOINT STATEMENT OF
UNCONTROVERTED FACTS - 15

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734

broadcast.  Id., at ¶ 108.

76.    In the nine seasons before Hickey's arrival (from 2010 to 2018), Coach Schuller's Women's Basketball Team won an average of 17.7 games per year.  Id., at ¶ 111.  This included finishing in 4th place or higher and winning 10 or more Big Sky games in 8 out of those 9 years.  Id.

77.    On 2/3/19, one of Coach Schuller's Women's Basketball ("WBB") players, reported to Coach Schuller that she was extremely concerned about the safety of her close friend – another student, who was dating an EWU football player. Id., at ¶ 113.

78.    That player showed Coach Schuller social media posts purporting to describe and evidence alleged abuse against her friend, and a video posted online that appeared to depict the football player throwing what looked like DVDs at her, and screaming vulgarities and threats at her while moving out of her apartment.  Id., at ¶ 114.

79.    Coach Schuller was deeply disturbed by these posts and the video, and advised her player that as a mandatory Title IX reporter, she was going to have to report what she had been shown and told to her supervisor, Defendant Hickey. Id., at ¶ 115.

80.    Coach Schuller then did just that, immediately walking down the hall to Defendant Hickey's office.  Id., at ¶ 116.  Coach Schuller then reported what she

JOINT STATEMENT OF
UNCONTROVERTED FACTS - 16

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734

had been told by her player and showed Defendant Hickey the social media posts. <u>Id</u>.

81.    Defendant Hickey allegedly delegated reporting obligations for Title IX issues affecting the Athletic Department to Sarah Adams, confirming in her deposition that a single point of contact was needed because "Title IX did not want a hundred people calling them". <u>Id</u>., at ¶ 118.

82.    In a later Title IX investigation into allegations that Defendant Hickey treated female employees differently than male employees, and allowed male coaches to "talk down" to them, Hickey acknowledged that "Wendy and Aaron disagreed and Aaron was rude in trying to make a point that he worked harder than anyone else." <u>Id</u>., at ¶ 130.  Hickey did not stop Best's behavior.

83.    In late September 2020, Coach Schuller was interviewed as part of a Title IX audit of the Athletic Department conducted by EWU's consultant, Dr. Helen Grant.  <u>Id</u>., at ¶ 131.

84.    On September 29, 2021, the Auditor also interviewed Women's Golf Coach Brenda Howe as part of the same audit.  <u>Id</u>., at ¶ 133.

85.    In a later email sent by Coach Howe to EWU on 4/22/2021 expressing fear of future retaliation from Defendant Hickey, Coach Howe explained she had told Dr. Grant "I've learned to not speak up for myself or for my athletes based on how Lynn Hickey treats Wendy Schuller and Marcia Mecklenburg publicly in

JOINT STATEMENT OF
UNCONTROVERTED FACTS - 17

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734

meetings when they have suggestions, ask questions etc. … I don't want to put myself in a position for her to possibly treat me as poorly as she does with two other veteran female coaches." Id., at ¶ 134. Consistent with Coach Howe's recollection of the interview, Dr. Grant's "summary" of the information gathered from Coach Howe during her interview states "women coach is treated differently tha [sic] anyone else.  Too afraid to say anything." Id.

86.    Immediately following Dr. Grant's 9/29/20 interview with Coach Howe, Dr. Grant in fact did proceed to share Coach Howe's comments about Coach Schuller and "equity" in the Athletic Department with Defendant Hickey. Id., at ¶ 135.

87.    A subsequent Title IX Investigation ("6/14/21 Hickey Title IX Investigation") was conducted by EWU in June and July of 2021.  Id., at ¶ 136. During the same timeframe, an Athletic Department Environmental Survey ("6/15/21 Climate Survey") was conducted, following EWU's receipt of allegations from multiple additional employees accusing Defendant Hickey of treating female employees differently than male employees.  Id.

88.    Defendant Hickey's response to EWU's 6/14/21 Title IX investigation confirms that during their 9/29/20 conversation, Dr. Grant told Defendant Hickey that "Brenda had some strong concerns, reiterating once again the scheduling of the weight room for soccer, and she urged Dr. Grant to talk to the other women's coaches

JOINT STATEMENT OF
UNCONTROVERTED FACTS - 18

about the culture in the department", including specifically Wendy Schuller.  <u>Id</u>., at ¶ 137.

89.    Dr. Grant therefore conducted a second interview of Coach Schuller after speaking with Coach Howe, at which time Coach Schuller disclosed what she perceived as Defendants' unequal treatment of female employees and athletes.  <u>Id</u>., at ¶ 138.

90.    Coach Schuller likewise reported that Defendant Hickey treated her differently than younger female coaches and/or male coaches in the department, and that the reason she had not initially raised that issue was her fear of retaliation.  <u>Id</u>., at ¶ 139.

91.    Defendant Hickey disputes Coach Howe's use of the word "drama," but admits that she told Coach Howe that she and Coach Schuller needed to stop engaging in "gossip".  <u>Id</u>., at ¶ 143.

92.    In her recent deposition on 10/10/24, Defendant Hickey confirmed that by "gossip", she referred to the Title IX concerns Coaches Howe and Schuller had raised to the Title IX auditor:

> "A    … I said, as I told you before the break, that I reiterated to [Howe] that, hey, one of our priorities this year as the staff is we don't gossip, that we don't go behind people's back.  So I would appreciate if you have concerns that instead of telling an outside person you had never even met before, why wouldn't you come in and tell me.  At that time I thought I was talking about concerns about team travel and the weight room and all that.

JOINT STATEMENT OF
UNCONTROVERTED FACTS - 19

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734

Q      The Title IX concerns that were raised by the Title IX auditor?

A      Yep, yep."

"Q      Okay.  You had mentioned gossip several times, both in this deposition and in documents I've seen in relation to Wendy Schuller.  What are you talking about when you reference gossip?

A      There was a culture in the Department where people had a tendency to say one thing to someone's face, and then behind their back they would act totally different and it was very harmful and just needed to get it shut down and - -

…

Q      Why did you reference gossip in the context of this conversation with Brenda Howe regarding Helen Grant's report?

A      Well, I think in my mind gossip is what I just said a few seconds ago. It's not being able to have the courage to direct concerns to the person that maybe is in control in trying to change the concerns.  I guess that's not really gossip.  But it's just back talking.  You know, you say one thing, you act one way in front of their face and then like, okay, everything's fine or you done even come in my office and then behind my back, oh, this is bad, this is bad. And I'm going come on, guys, I can't fix it if I don't know what's going on in your minds, what's in your hearts.  So that's what I'm referring to.

Q      So you were referring to the comments that we've been talking about to… Helen [Grant]?

A      Yes." Id., at ¶ 144.

93.    In December 2020, an EWU athletic trainer reportedly overheard two EWU Women basketball players discussing repulsive comments about rape allegedly posted on Snapchat by certain EWU football players.  Id., at ¶ 151.  That trainer then apparently reported what they overheard to the EWU Title IX office.  Id

JOINT STATEMENT OF
UNCONTROVERTED FACTS - 20

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734

94.     Shortly thereafter, one of Coach Schuller's players informed her that she and the other players refused to participate in the subsequent Title IX investigation, specifically because they had been confronted by the football players at issue and were afraid to get involved. <u>Id</u>., at ¶ 152. This player specifically informed Coach Schuller that she and the others had been instructed by the football players that they "better not say anything further". <u>Id</u>.

95.     The monthly one-on-one meetings Coach Schuller previously had with Defendant Hickey were discontinued altogether without explanation. <u>Id</u>., at ¶ 155.

96.     Defendant Hickey continued to actively avoid Coach Schuller on campus, using circuitous routes through the Athletic Department in order to avoid using the hallway outside Coach Schuller's office. <u>Id</u>., at ¶ 156.  Hickey also continued to deliberately ignore Coach Schuller's repeated pleas for funding and access to resources needed to help the Women's Basketball Team succeed in the face of Covid and the advent of serious mental health concerns occurring as reported by her players. <u>Id</u>.

97.     Prior to terminating Coach Schuller's employment on 3/31/21, Defendant Hickey never explicitly identified a single issue or complaint with Coach Schuller's performance as Head Coach of the Women's Basketball Team to Coach Schuller. <u>Id</u>., at ¶ 157.

98.     Nor did Defendant Hickey otherwise complain about the team's

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734

performance to Coach Schuller in the three years she was Coach Schuller's supervisor. Id., at ¶ 158. This is contrary to Defendant's claim that performance issues formed the basis for Plaintiff's termination on 3/31/21. Id.

99. Throughout the 20 years Coach Schuller was a Head Coach at EWU, coaches were never summarily terminated prior to the expiration of their contracts due to a team's win/loss record. Id., at ¶ 159.

100. Defendant Hickey admits that she understood she was required to provide performance evaluations for employees in the Athletic Department. Id., at ¶ 163. However, Defendant Hickey acknowledges that throughout her tenure as Athletic Director, she never gave Coach Schuller a single performance evaluation or review, formal or informal. Id.

101. This is despite the fact that as administrative exempt employee, EWU Policy required that Coach Schuller receive annual performance appraisals for exactly that reason. Id., at ¶ 164.

102. Specifically, Policy 406-01 explains that one of the purposes of the appraisal system for exempt employees like Coach Schuller is to "[i]dentify areas of improvement." Id., at ¶ 165.

103. Coach Schuller's most recent employment contract similarly contemplated that she would receive regular performance reviews, stating "Performance reviews by the University of the Employee shall specifically include

JOINT STATEMENT OF
UNCONTROVERTED FACTS - 22

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734

an evaluation of how well the participants in the University's intercollegiate athletics programs are performing academically." Id., at ¶ 166.

104.    Coach Schuller's most recent performance evaluation before Hickey was hired did not identify performance issues, and instead lauded her performance, rating her performance as exceeding expectations in multiple categories including competitive results. Id., at ¶ 168.

105.    On or about 4/19/19, Coach Schuller was paid a performance incentive based on the Women's Basketball Team's success in the "Conference and post season competition." Defendant Hickey personally signed approving Coach Schuller's receipt of this bonus. Id., at ¶ 169.

106.    Moreover, throughout her employment at EWU, Coach Schuller received academic incentive bonuses every year of her employment due to her team's successes in the classroom. Id., at ¶ 170. This included bonus payments that Coach Schuller earned and received every year after Hickey was hired, the most recent of which was approved in July 2020, during the pandemic. Id.

107.    On 1/22/21, Defendant Hickey emailed Dr. Grant advising that she would be reviewing Dr. Grant's draft Title IX Assessment Summary that weekend. Id., at ¶ 173.

108.    On 3/16/2021, at the conclusion of the Women's Basketball Season, Coach Schuller was notified by email that Hickey wanted to meet with her on

JOINT STATEMENT OF
UNCONTROVERTED FACTS - 23

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734

3/17/2021, to finally provide her with a "performance review". Id., at ¶ 174.

109.   This was to be Coach Schuller's first performance review/appraisal since Hickey became the Athletic Director in February 2018.   Id., at ¶ 175. Defendant Hickey told Coach Schuller that her performance review would be sent to her in advance of the meeting "so that you have a chance to review it." Id.

110.   However, no performance review was ever sent, and Hickey abruptly cancelled the meeting the morning it was to occur. Id., at ¶ 176.

111.   Defendant Hickey had already decided to terminate Coach Schuller's employment on or before the day she emailed Coach Schuller to request a meeting to discuss her "review". Id., at ¶ 177.

112.   This is confirmed by text messages between Defendant Hickey and SWA Sarah Adams and Deputy Athletic Director Devon Thomas also dated 3/16/21, in which Defendant Hickey requested their feedback on a draft performance evaluation she had prepared for Coach Schuller. Id., at ¶ 178.

113.   In response, Mr. Thomas texted back "I read it, it was direct.  It read as though we were looking to give another year.  Is that the direction". Id., at ¶ 179.

114.   Defendant Hickey responded "No.  But waiting to get green light from President.  Interesting comment – so what should I be tougher on?" Id., at ¶ 180.

115.   On 3/17/21, Defendant Hickey emailed EWU Interim President David May the draft Schuller Evaluation and letter, acknowledging Coach Schuller's 20-

JOINT STATEMENT OF
UNCONTROVERTED FACTS - 24

years of employment at EWU, and advising that Coach Schuller's contract be terminated immediately a year before the expiration of her contract term.  <u>Id</u>., at ¶ 182.

116.   The reason given for this recommendation was the purported performance of the team and complaints allegedly made by six unidentified players, all but one of whose identities Defendant Hickey does not recall.  <u>Id</u>., at ¶ 183.

117.   The draft Schuller Evaluation prepared and submitted by Defendant Hickey to Dr. May in support of her recommendation to terminate Coach Schuller specifically cited to Coach Schuller's purported "negativity" and "gossiping" as a basis for marking down her performance.  <u>Id</u>., at ¶ 184.

118.   Hickey notes in her draft Schuller Evaluation that "there has not been a lot of guidance or help from development officers in developing a plan" for fundraising for the Women's Basketball Team.  <u>Id</u>., at ¶ 189.

119.   On 3/29/21, Defendant Hickey received the final Title IX Assessment Summary from the audit performed the preceding September (2020).  <u>Id</u>., at ¶ 193.

120.   The Title IX Assessment Summary further confirmed that 14 men's basketball "away" games were broadcast on television and/or streamed, with all home games broadcast on commercial radio.  Only one women's basketball away game was broadcasted or streamed on television, and none of the women's basketball games broadcast on commercial radio. <u>Id</u>., at ¶ 196.

JOINT STATEMENT OF
UNCONTROVERTED FACTS - 25

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734

121.   The Title IX Assessment Summary expressly recommended that EWU "review the administrative support for men's and women's basketball" and noted "It is unusual for women's basketball to not have a Director of Basketball Operations. They should have a DOBO the same as men's basketball." Id., at ¶ 197.

122.   The day after receiving the final report, on 3/30/21, Hickey sent Coach Schuller a text message to reschedule her "end of year evaluation" for the following afternoon. Id., at ¶ 198.

123.   On 3/25/21, a severance check for Coach Schuller's termination was requested, and on 3/29/21, an "At-Will Termination Agenda" was prepared. Id., at ¶ 200.

124.   On 3/31/21, when Coach Schuller showed up at the meeting expecting to go over her first performance review in the 3 years since Defendant Hickey was hired, she was instead summarily fired on the spot, pursuant to a letter stating that she was being terminated "for Convenience". Id., at ¶ 202.

125.   After she was brazenly fired by Defendant Hickey, Coach Schuller was given 15 minutes to grab what she could from her office on the campus where she had been employed for 20 years, and was then escorted off the premises. Id., at ¶ 204.   Thereafter, EWU issued a press release announcing Coach Schuller's termination. Id.

126.   Coach Schuller's health insurance benefits were cut off effective the

JOINT STATEMENT OF
UNCONTROVERTED FACTS - 26

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734

next day, leaving her to scramble to find coverage for herself and her special needs son.  Id., at ¶ 205.

127.   Previously, on 12/31/2020, 1/2/2021, and 1/7/21, Defendant Hickey texted Coach Schuller congratulations in response to the team's wins.  Id., at ¶ 208.

128.   Defendant Hickey testified in her recent 10/10/24 deposition that in assessing whether a coach was meeting expectations, she would typically consider whether any external factors or extenuating circumstances other than coaching might have impacted a team's performance.  Id., at ¶ 210.

129.   Hickey testified that during her tenure as Athletic Director at EWU, the Women's Basketball Team and Athletic Department as a whole were majorly impacted by a global pandemic, massive budgetary cuts, a public financial review, and major injuries and athlete mental health concerns.  Id., at ¶ 211.

130.   On 11/11/20, Hickey emailed Coach Schuller stating "Wendy – very sorry about all of this.  Maybe you are getting through the worst of it now.  Let me know if we need to do a call with the parents and what kind of services we can offer the girls during this time." Id., at ¶ 212.  On 12/29/20, Coach Schuller informed Defendant Hickey that a player had decided to quit the team because "she was homesick and unhappy and wanted to move home." Id.

131.   On 1/9/21, Coach Schuller texted Defendant Hickey advising her of a positive Covid test result for one of the players, who was waiting on results from a

JOINT STATEMENT OF
UNCONTROVERTED FACTS - 27

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734

PCR test to confirm.  Id., at ¶ 213.

132.   Defendant Hickey responded by stating "It is just out of your control. So you have had a good start – they will come back.  Just have to stay positive - like you have the whole time.  The kids have enough drama already - just keep them as relaxed as possible.  At least this time you can do individual practice.  But maybe it will not be positive."  Id., at ¶ 214.

133.   On 1/11/21, Defendant Hickey emailed Coach Schuller congratulating her on an award one of her players had received, and on "the improved play of the team the past two weeks."  Id., at ¶ 215.  Defendant Hickey further acknowledged "I am sorry [sic] what you [sic] all having to go through with COVID.  Please let us know if there is anything special we can help you and the kids get through this new quarantine situation."  Id.

134.   The Women's Basketball players frequently were in "close contact" traveling to and from games.  As a result, when one player came down with something, multiple players were often quarantined under applicable health rules and guidelines.  Id., at ¶ 217.

135.   As mentioned above, additional major impacts on the team's performance and ability to win games in 2019 and 2020 included serious mental health concerns caused by both Covid, and the sexual assault on one of the players in 2019.  Id., at ¶ 220.  Defendant Hickey admitted in her deposition that she was

JOINT STATEMENT OF
UNCONTROVERTED FACTS - 28

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734

aware of these concerns and their impact on the team's performance. Id.

136.   Then, just as the team hit its stride and was winning games, in February 2021, one of Coach Schuller's best players suffered a season-ending knee injury. Id., at ¶ 221.  This had a devastating impact on the team's morale and ability to win games.  Id.

137.   During the same time frame, the Athletic Department was the subject of a very public financial review by the Pictor Group to determine whether EWU would remain a Division I institution and/or eliminate its football team.  Id., at ¶ 222.

138.   Defendant Hickey admitted during her 10/10/24 deposition that in 2020 and 2021, the Athletic Department and EWU's "young" Women's Basketball Team, were impacted by significant barriers, including without limitation "the Pictor Group audit and the Title IX assessment and a climate survey and massive budget cuts, and massive issues with respect to resources."  Id., at ¶ 223.

139.   Even the *NCAA* recognized the devastating impact of the pandemic by granting all athletes playing fall or winter sports in 2020 an extra year of eligibility. Id., at ¶ 224.

140.   Men's Track & Field Coach Stan Kerr was not terminated, despite the fact that the track team finished in 5th place in the conference for outdoor track events in 2021, 6th place for 2018-19, and had finished in 12th and 9th places respectively in 2017 and 2016. Id., at ¶ 227.

JOINT STATEMENT OF
UNCONTROVERTED FACTS - 29

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734

141.   Cross Country Head Coach Sam Read was not fired, despite the fact that his cross-country team never finished higher than 10th place in the conference between 2018 and 2021.  Id., at ¶ 228.

142.   The Women's Volleyball Team's win/loss record was far worse than the record of the Women's Basketball Team during the same timeframe at issue.  Id., at ¶ 229.

143.   In the eight years before Hickey was hired, the Women's Basketball Team finished in the top 4 in the conference every year.  Id., at ¶ 231.  Even after Hickey was hired, Coach Schuller's players consistently received Big Sky Conference awards, including 4 players in 2019, and Maisie Burnham who was the Big Sky Conference Freshman of the Year for 2021.  Id.  Ms. Burnham entered the transfer portal only after EWU announced it had fired Coach Schuller.  Id.

144.   Hickey admits that multiple Volleyball players accused Ms. Flores-Cloud of misogynistic, sexist, and racist conduct and behavior and Title IX violations, triggering a formal investigation by the University.  Id., at ¶ 232.

145.   Ms. Flores-Cloud was not terminated prior to the expiration of her contract.  Id., at ¶ 233.  In fact, she was not terminated at all.  Rather, Coach Flores-Cloud voluntarily resigned of her own accord.  Id.

146.   In response to yet another Title IX investigation subsequently conducted into additional allegations made against Defendant Hickey, this time by

JOINT STATEMENT OF
UNCONTROVERTED FACTS - 30

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734

former Interim Head Women's Volleyball Coach Anjela Spoja, Hickey later stated that Ms. Flores-Cloud's decision to resign left her "completely blind-sided and very disappointed". Id., at ¶ 234.

147.    As for the mere fact of players voluntarily transferring in and of itself, less than one month after Coach Schuller had been fired, Defendant Hickey on 4/20/21 spoke with the media about this very issue. Id., at ¶ 237. At that time, Defendant Hickey acknowledged "We're a program that's been under a very public (financial) review all year, and we're also dealing with a pandemic that's caused a lot of angst for everyone … It's the perfect storm." Id.

148.    Indeed, it was common for players to transfer from EWU for various different reasons, including transferring to bigger institutions with better resources, and/or to Division II programs allowing for more playing time. Id., at ¶ 238.

149.    Defendant Hickey is further quoted saying of the transfers out of multiple sports teams that year, "It's a new culture for us," and "For years and years, there's been a penalty (sitting out a season) for someone who transfers out, but now that penalty has been taken away." Id., at ¶ 239.

150.    After Ms. Flores-Cloud became Head Coach on 6/25/2018, EWU's records confirm that she too had multiple players transfer out of her program between 2018 and 3/31/21, including 6 players who entered the transfer portal between 11/7/18 and 4/25/19. Id., at ¶ 240.

JOINT STATEMENT OF
UNCONTROVERTED FACTS - 31

151.   Coach Bodnar was fired despite the fact that the Soccer Team had finished in 3rd place in 2019 and the 2020-21 seasons, with recent trips to the NCAA Tournament in 2016 and 2017.   Id., at ¶242.

152.   Defendant Hickey was personally involved in the hiring process for Coach Schuller's replacement. Id., at ¶ 244.

153.   In the process of considering potential replacements, Defendant Hickey, and then-SWA Sarah Adams, discussed a woman named Deb Patterson. Id., at ¶ 245.

154.   In her email to EWU Interim President May recommending hiring Heather Ezell, Defendant Hickey again referenced age as part of her hiring decision, stating that if Ms. Ezell accepted the position, EWU "will have a great **young coach** to re-build our women's basketball program." Id., at ¶ 249.

155.   Defendant Hickey proposed paying Ms. Ezell a higher salary than what EWU had been paying to Coach Schuller before Coach Schuller's pay had been reduced due to Covid.  Id., at ¶ 250.

156.   Devon Thomas, then-Deputy Athletic Director responded by pointing out "$130k is more than Wendy was set to make.  Do we face any push for hiring a first time HC at a hire [sic] rate than a 20+ year veteran." Id., at ¶ 251.

157.   Coach Schuller and male then-Men's Head Basketball Coach Shantay Legans had both signed their most recent contracts within a week of each other, on

JOINT STATEMENT OF
UNCONTROVERTED FACTS - 32

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734

4/19/17 and 4/21/17, respectively.  Id., at ¶ 256.

158.   At that time, Coach Schuller had over 17 years of experience as a head coach at EWU.  Id., at ¶ 257.

159.   Male Coach Legans had no prior experience as a head coach, and had only been the assistant coach for EWU's Men's Basketball Team for the 8 years before he was made Head Coach in 2017. Id., at ¶ 258.

160.   EWU's records confirm that the Men's Basketball and Women's Basketball team records in the three years leading up to the 2017 contracts offered to Coaches Schuller and Legans were virtually identical.  Id., at ¶ 259.

161.   However, Coach Schuller's contract provided for a base pay of $110,000, which was $20,000 less than the $130,000 offered and paid to male Coach Legans.  Id., at ¶ 260.

162.   Coach Schuller's contract provided for annual salary adjustments of $2,500, while male Coach Legans' contract provided for annual salary adjustments of twice that at $5,000. Id., at ¶ 261.

163.   Similar discrepancies existed with regard to most of the incentive bonuses contained in the respective contracts of both coaches.  Id., at ¶ 262.

164.   This includes without limitation, the difference in the academic performance incentives paid to Coach Schuller and male Coach Legans.  Id., at ¶ 263.

JOINT STATEMENT OF
UNCONTROVERTED FACTS - 33

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734

165.   Coach Schuller's contract provided for her to receive a bonus in the amount of $1,000 if the women's basketball team had a cumulative GPA above 3.4 or if the team's multi-year APR was 975 or greater. Id., at ¶ 264.

166.   Male Coach Legans' contract provided for him to receive a bonus in the amount of $5,000, if the men's basketball team achieved a cumulative GPA of 3.0 or greater and if the team's multi-year APR was 950. Id., at ¶ 265.

167.   Shortly after learning of Coach Schuller's termination, EWU Golf Coach Howe sent EWU's administration the 4/22/21 email referenced above, alleging Defendant Hickey's disparate treatment of older female employees, including Coach Schuller in particular.  Id., at ¶ 271.  In that email, Coach Howe advised that Coach Schuller had been terminated as a result of "retaliation, grudges, and poor leadership", and explained she was sending the email because she feared she too would be retaliated against by Defendant Hickey.  Id.

168.   On 4/6/20, EWU's Associate Vice President Annika Scharosch accordingly sent Amy Cornish a letter, acknowledging that Ms. Cornish had "shared concerns" about another male coach, and possible misconduct toward a female soccer player in 2017.  Ms. Scharosch also noted that Ms. Cornish had "shared several experiences you have had in the Athletic Department where staff made sexual comments or jokes about pornography."  Id., at ¶ 273.

169.   While it appears that Ms. Cornish did not pursue a formal complaint at

JOINT STATEMENT OF
UNCONTROVERTED FACTS - 34

Dunn&Black
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734

that time, she did in fact participate in the 6/14/21 Title IX Investigation referenced above that EWU commenced against Defendant Hickey following receipt of Coach Howe's 4/22/21 email.  Id., at ¶ 274.

170.   The ensuing Investigative Report signed by EWU's Director of Equal Opportunity Ray Rector confirms that Ms. Cornish emailed him the below complaint about Defendant Hickey and the culture in the Athletic Department:

**15. Amy Cornish:**

On June 25, 2021 Ray Rector spoke with Amy Cornish, former EWU Employee, via email.  Cornish provided an email which contained a statement.  The statement is below in Cornish's own words.

"Differential treatment based on gender or staffing type

- It is my observation that Lynn has deep beliefs on gender roles.
- When we hired Sarah in fall of 2018, Lynn said something about how great it is to have another female on staff to help plan parties
- Mikayla Anderson and I were required to decorate the office for homecoming specifically because we are women and decorating is a woman's job. Both Mikayla & I expressed that we do not care about decorating or parties and don't have the best eye for that and Lynn still made us do it because we were the only women in the office.
- Several times I was directed to plan parties or decorate events because it needed a "woman's touch" even though I expressed to no experience or desire to do this and our game day crew had a better eye for decor.
    - Pam's retirement party
    - NLI signing day
    - Football Senior banquet - Jace Butorac had planned this event for several years and knew what he was doing but Lynn said that men can't run events like that and she needed me to supervise the decorating details (2018)
- One time in a senior staff meeting it was being discussed about what would happen if Dave Cook left and someone suggested Monica stepping into his role - Lynn responded saying a woman couldn't do his job and cover football.
- I heard from someone - but did not verify, so it's only hearsay, that Lynn wouldn't consider me for Chad Karthauser's job when he left because it needed to be a man in that role."

Id., at ¶ 275.

171.   Mr. Rector's Report further incorporated the full text of Coach Howe's Complaint against Defendant Hickey:

JOINT STATEMENT OF
UNCONTROVERTED FACTS - 35

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734

### 1. Brenda Howe:

On June 15, 2021 Ray Rector spoke with Brenda Howe, Women's Golf Coach, via telephone. Howe stated she had sent an email to Human Resources about what she had experienced concerning Lynn Hickey, Director of Athletics, discriminating against the female coaches in Athletics. (See Attachment A for details) The email statement is below in Howe's own words.

"On Sept. 29th I met with an NCAA Title IX representative. During this meeting, I expressed concerns regarding our athletic director and the way female coaches are treated within the department by her, as well as another head coach in our department. In my complaint, I brought attention to the fact that female coaches are talked down to by Lynn Hickey. She also allows another male head coach to do the same to other employees and coaches during coaches meetings. I made it clear that I've learned to not speak up for myself or for my athletes based on how Lynn Hickey treats Wendy Schuller and Marcia Mecklenburg publicly in meetings when they have suggestions, ask questions etc.....I don't want to put myself in a position for her to possibly treat me poorly as she does with two other veteran female coaches.

During this meeting I mentioned that I'm certain that Lynn Hickey will hold grudges, retaliate, and treat females differently when they speak up. I also expressed concerns about my comments being passed along to Lynn. To my surprise, everything I had brought up was passed directly to Lynn, which resulted in a meeting of her telling me that I need to stay out of Wendy Schuller's drama, and in a way, she tried to convince me that what I'm perceiving is not really the true perception of what is happening.

With recent events regarding the firing of our Women's Basketball Coach that I believe is a result of retaliation, grudges, and poor leadership, I've made the decision that I would like my concerns documented. The concerns I expressed are concerns that I feel can be used by Lynn Hickey to retaliate against me and my future employment."

On June 15, 2021 Ray Rector received additional emails provided by Howe concerning the treatment of female coaches by Hickey. (See Attachment B for details) These emails concerns the scheduling of the weight room for fall 2020.

Id., at ¶ 276.

172.   Mr. Rector also interviewed Alexis Gholston, Assistant Athletic Trainer, who alleged "men's basketball is treated differently that [sic] the women's basketball is. Gholston stated during team trips some of the females have to purchase their own food. … Further, Gholston stated the men's basketball coach will get whatever they want, which isn't the case for the women's coach." Id., at ¶ 277.

173.   Mr. Rector further cited to a statement provided by Sarah Adams, which was purportedly "retracted". Id., at ¶ 278.

JOINT STATEMENT OF
UNCONTROVERTED FACTS - 36

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734

174.   In particular, Mr. Rector notes reflect that Ms. Adams stated "she has seen sexism in the Athletics Department," and that "there is a very strong female personality conflict between Hickey and any of the female members of the Athletics Department, but that Hickey bends over backwards for the male members of the department." Id., at ¶ 280.

175.   Mr. Rector's notes also report that Ms. Adams told him "as a former female coach Hickey is much more likely to get in a confrontation with the female coaches and staff, but Hickey would never confront a male coach." Id., at ¶ 281. He recounts "Adams further stated that there is a major sexism problem in the department that Hickey pushes." Id.

176.   After a conversation with Associate Vice President Attorney Annika Scharosch, Ms. Adams emailed Mr. Rector stating "I believe I can support this effort in a different direction.  Will you please discard my statement and I will send over a more aligned reiteration." Id., at ¶ 283.

177.   Mr. Rector's Investigative Report concluded that there was insufficient evidence to substantiate most of the allegations against Defendant Hickey.  Id., at ¶ 285.

178.   A summary prepared by EWU of the interviews conducted as part of the Survey identified the following statements by coaches and employees in the Athletic Department regarding their experiences with Defendant Hickey:

JOINT STATEMENT OF
UNCONTROVERTED FACTS - 37

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734

*"She talks to women coaches like idiot children"*

*"Lynn treats veteran female coaches like pieces of shit"*

*"Lynn allows sexist comments and language in meetings.  Chauvinistic language allowed."*

*"Former women's basketball coach has dirt on Lynn, and Lynn doesn't like her.  So, she fired her and wouldn't let her come into the building.  Was told to fire her by a male coach who Lynn listens to."*

*"Lynn is a bully, and answering questions or talking about these issues make [sic] me nervous."*

*"Lynn contacts Athlete's parents to get dirt on coaches with open investigations."*

*"Head football coach runs the roost and his opinion is what goes.  There are a lot of inequities that are going on."*

*"Differences in hiring practices, giving preference to football"*.

*"Men's sports do get more money from fundraising than women's because we don't have the same support base.  We can't give the same money for food and resources to our Athletes as other men's sports do, so that's concerning."*

*"Men's sports are prioritized way more than women's."*

*"Men's sports get priorities, men's coaches get priorities."* <u>Id</u>., at ¶ 288.

179.   Additional investigations were conducted into subsequent allegations against Defendant Hickey later in 2021 and in 2022, including additional allegations by Golf Coach Brenda Howe accusing Defendant Hickey of retaliation, and by the former Interim Head Volleyball Coach Angela Spoja in 2022.  <u>Id</u>., at ¶ 289.

180.   After the parent of one of EWU's Volleyball players complained to

JOINT STATEMENT OF
UNCONTROVERTED FACTS - 38

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734

Defendant Hickey, alleging that his daughter and her teammates were being subjected to abusive and unlawful behavior by Coach Flores-Cloud, EWU Associate VP Annika Scharosch sent an email to Hickey stating, "we have already received concerns that people are perceiving your conversations as suppressing complaints and deterring people from reporting concerns of discrimination.  As I am sure you know, this is very concerning and we always want everyone to feel open and encouraged to report concerns of discrimination." <u>Id</u>., at ¶ 293.  Associate VP Human Resources Deborah Danner, J.D. emailed advising Hickey "I encourage you to avoid placing yourself in a situation where it could be perceived that you are intimidating a witness." <u>Id</u>.

DATED this 25th day of November, 2024.

DUNN & BLACK, P.S.

<u>s/ ALEXANDRIA T. DRAKE</u>
ALEXANDRIA T. DRAKE, WSBA No. 45188
ROBERT A. DUNN, WSBA No. 12089
Attorneys for Plaintiff
Dunn & Black, P.S.
111 North Post, Suite 300
Spokane, WA 99201-0907
Telephone: (509) 455-8711
Fax:          (509) 455-8734
Email:  bdunn@dunnandblack.com
            adrake@dunnandblack.com

JOINT STATEMENT OF
UNCONTROVERTED FACTS - 39

1

2

3

4

5

6

 ROBERT W. FERGUSON
Attorney General

s/ ELIZABETH ANNE OLSEN
ELIZABETH ANNE OLSEN
WSBA No. 58702
Assistant Attorney General
Elizabeth.Olsen@atg.wa.gov
Appearing Attorney for Defendants

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

JOINT STATEMENT OF
UNCONTROVERTED FACTS - 40

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 25th day of November, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/EFC system. The CM/ECF system will send notification of such filings to the following:

- **Richard Reese Sterett**

    reese.sterett@atg.wa.gov,carrie.garlington@atg.wa.gov,TORSpoEF@atg.wa.gov,patty.amori@atg.wa.gov,jodi.gress@atg.wa.gov,Flor.Quintero@atg.wa.gov

- **Elizabeth Anne Olsen**

    Elizabeth.olsen@atg.wa.gov

s/ ALEXANDRIA T. DRAKE
ALEXANDRIA T. DRAKE, WSBA No. 45188
ROBERT A. DUNN, WSBA No. 12089
Attorneys for Plaintiff
Dunn & Black, P.S.
111 North Post, Suite 300
Spokane, WA 99201-0907
Telephone: (509) 455-8711
Fax:        (509) 455-8734
Email:  bdunn@dunnandblack.com
            adrake@dunnandblack.com

JOINT STATEMENT OF
UNCONTROVERTED FACTS - 41

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734