FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 27, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| WENDY SCHULLER, an individual, | No. 2:23-cv-00059-RLP |
| Plaintiff, | ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| v. | |
| EASTERN WASHINGTON UNIVERSITY, a regional university; and LYNN HICKEY, an individual, | |
| Defendants. | |

BEFORE THE COURT is Defendants' Motion for Summary Judgment (ECF No. 46). Oral argument was held on this matter on February 25, 2025. Plaintiff Wendy Schuller was represented by attorney Alexandria Drake. Defendants Eastern Washington University (EWU) and Lynn Hickey were represented by attorney Elizabeth Olsen.

In her Complaint, Ms. Schuller alleges Defendants terminated her as Head Coach of the EWU Women's Basketball team in retaliation for her Title IX reporting, and on the basis of her gender and age. She also claims Defendants

ORDER ON DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT * 1

unlawfully paid her less than the men's basketball Head Coach, and breached her employment contract by terminating her without cause. She asserts related state law and § 1983 and 1985(3) claims in addition to her discrimination and breach of contract claims.

For the reasons discussed below, Defendants' Motion for Summary Judgment is granted in part and denied in part.

BACKGROUND

EWU hired Ms. Schuller to be the Head Coach of the EWU Women's Basketball team in June 2001. ECF No. 58, ¶5. Ms. Schuller was 51 years old in 2021. ECF No. 58, ¶11. EWU appointed Lynn Hickey as its Athletic Director on April 25, 2018. ECF No. 48, ¶10.

Ms. Schuller signed a five-year contract extension with EWU on April 19, 2017. ECF No. 48, ¶36. Under the contract, EWU paid Ms. Schuller $110,000 annually, with $2,500 yearly raises. ECF No. 48-1 at 3. In addition, the contract provided Ms. Schuller various performance-based bonuses, including a $1,000 bonus if the team's cumulative GPA was above 3.4. *Id*. Ms. Schuller's 2017 contract permitted EWU to terminate her for convenience without cause if EWU chose to buy-out her contract with six months' pay. ECF No. 48-1 at 6.

EWU also hired Shantay Legans as the Coach of the EWU Men's Basketball team in April 2017. ECF No. 58, ¶¶194-96. EWU paid Mr. Legans $130,000

annually with $5,000 yearly raises, and a bonus of $5,000 for a cumulative team GPA of 3.0 or better. ECF No. 63-1 at 3.

In 2019, pursuant to Title IX requirements, Ms. Schuller reported domestic violence allegations made to Ms. Hickey by an EWU Women's Basketball player against an EWU football player. ECF No. 58, ¶¶107-111. According to Ms. Schuller, when she followed up on the report Ms. Hickey behaved dismissively, then angrily, and accused her of engaging in "gossip." ECF No. 58, ¶¶113-16.

In September 2020, Ms. Schuller and the Head Coach of the EWU Women's Golf team, Brenda Howe, spoke with an auditor as part of a Title IX audit of the EWU Athletic Department. ECF No. 58, ¶120. After Ms. Hickey became aware of Ms. Howe's interview with the auditor, Ms. Hickey confronted Ms. Howe and charged her not to engage in "gossip." ECF No. 60-1 at 37:12-38:19. Ms. Schuller spoke with EWU's Title IX office again concerning alleged misconduct by EWU football team players in December 2020. ECF No. 58, ¶129.

Over the last three seasons of Ms. Schuller's tenure (2018-19, 2019-20, 2020-21), the EWU Women's Basketball team posted losing records of 13-20, 4-26, and 6-17. ECF No. 48, ¶17. The team finished 6th, 10th, and 9th in the Big Sky Conference in each of these seasons. ECF No. 48, ¶17.

On March 16, 2021, Ms. Hickey circulated a draft performance evaluation of Ms. Schuller to Athletic Department staff and the Interim University President.

ORDER ON DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT * 3

ECF No. 63-10 at 2. The draft evaluation included a section concerning Ms. Schuller's public outreach efforts. ECF No. 63-11 at 11. In this section, Ms. Hickey commented "[w]e have had conversations about her level of negativity within the department and the <u>gossiping</u> that occurs. I must assume that if we have seen that internally that the same attitude is projected outside our department." ECF No. 63-11 at 11 (emphasis added).

The draft evaluation concluded with a lengthy performance summary wherein Ms. Hickey recommended Ms. Schuller's termination. ECF No. 63-11 at 20-21. The reasons provided were the Women's Basketball team's failure to meet competitive standards, failure to draw in enough spectators, and loss of student athletes. *Id*. Ms. Hickey made a point of the team's low morale, specifically noting Ms. Schuller "projects a high level of frustration and exhaustion." *Id*.

On March 31, 2021, Defendants terminated Ms. Schuller pursuant to the termination for-convenience clause in her contract. ECF No. 48-2. Defendants offered Ms. Schuller a severance check containing six months salary, which Ms. Schuller refused. ECF No. 48, ¶41.

Contemporaneous with Ms. Schuller's termination, the coach of the EWU Women's Volleyball team resigned after players accused her of misconduct. ECF No. 60-1 at 60:22-61:5. This coach was in her 30s at the time of her resignation. ECF No. 60-1 at 62:7-8.

ORDER ON DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT * 4

1    After Ms. Schuller's termination, Defendants began searching for a

2  replacement Head Coach for the Women's Basketball team. ECF No. 64 at 2. One

3  candidate Defendants considered was Deb Patterson. ECF No. 60-1 at 6:11-14. Ms.

4  Hickey believed Ms. Patterson to be in her 50s. ECF No. 60-1 at 11:5-17. When a

5  staff member told Ms. Hickey that Ms. Patterson was "just incredibly unselfish" in

6  reference to Ms. Patterson's relationship with her family, Ms. Hickey replied

7  "[s]he also needs to get a little selfish or her age will soon stop her having another

8  opportunity." ECF No.  64 at 2.

9    Defendants initially offered the head coaching job to Heather Ezell, a coach

10  in her 30s. ECF No. 60-1 at 63:13-19. Ms. Hickey wanted to offer Ms. Ezell a

11  $130,000 annual salary, citing a desire to be "more equitable with our men's head

12  coach salary." ECF No. 58 at 2. In an email to the Interim University President

13  concerning the offer, Ms. Hickey stated "[i]f we can pull this off . . . we will have a

14  great young coach to re-build our women's basketball program." ECF No. 64-1 at

15  3. Ms. Ezell declined Defendants' offer. ECF No. 60-1 at 64:12-15. Defendants

16  ultimately hired a coach over the age of 40 to replace Ms. Schuller. ECF Nos. 57,

17  ¶254; 60-1 at 70:14-15.

18    After Ms. Schuller's termination, a gender discrimination complaint filed

19  against Ms. Hickey led to a Title IX investigation by the EWU Director of Equal

20  Opportunity. ECF No.  61-9. One female former employee alleged to the

ORDER ON DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT * 5

investigator (1) Ms. Hickey required her to decorate for parties and events because they "needed a woman's touch"; and (2) Ms. Hickey stated in a meeting that a "woman" could not do a particular job and cover football at the same time. ECF No. 65-2 at 9. The investigator concluded there was insufficient evidence to substantiate the allegations due to a failure of other employees to corroborate the allegations. ECF No. 65-2 at 27-28.

Another investigation against Ms. Hickey stemming from a complaint made by a former volleyball coach concluded in 2022. ECF No. 65-4 at 2. In one instance, the complainant stated Ms. Hickey told her she "hates girls and girl things-drama." ECF No. 65-4 at 4. Ms. Hickey sent a similar email to an unidentified recipient in November 2020, stating "[s]omeday let's have a talk about how I hate 'girl' stuff - - as far as gossip and finger pointing." ECF No. 61-3 at 2.

Ms. Schuller initiated this lawsuit on February 7, 2023. ECF No. 1-2. Ms. Hickey was deposed on October 10, 2024. ECF No. 60-1. At her deposition, with regards to her conversation with Ms. Howe, Ms. Hickey testified "gossip" meant Ms. Howe's failure to approach her with the concerns Ms. Howe expressed to the Title IX auditor. ECF No. 60-1 at 45:4-17.

With regards to Ms. Schuller and Mr. Legans' duties as heads of the Women's and Men's Basketball teams, Ms. Hickey testified:

ORDER ON DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT * 6

> [T]hey basically have the same duties, except the men's coach he had a lot of media opportunities and responsibilities, so that's probably the biggest difference on that. But no, they're doing the same job and it's not fair.

ECF No. 60-1 at 69:16-24.

## ANALYSIS

Summary judgment will be granted if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a). In ruling on a motion for summary judgment, the Court views the evidence and inferences therefrom "in the light most favorable to the adverse party". *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008) (quoting *Jones v. Halekulani Hotel, Inc.*, 557 F.2d 1308, 1310 (9th Cir. 1977)). A moving party who does not bear the burden of persuasion at trial can succeed on summary judgment either by producing evidence that negates an essential element of the non-moving party's claim or defense, or by showing that the non-moving party does not have enough evidence to prove an essential element. *Nissan Fire & Marine Ins. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party has satisfied its burden, to survive summary judgment, the non-moving party must demonstrate by affidavits, depositions, answers to interrogatories, or admission on file, "specific facts" showing a genuine dispute of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

ORDER ON DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT * 7

"Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). "Summary judgment is improper where divergent ultimate inferences may reasonably be drawn from the undisputed facts." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (internal quotation omitted). A motion for summary judgment on claims of employment discrimination must be carefully reviewed to protect an employee's right to a full trial, "since discrimination claims are frequently difficult to prove without a full airing of the evidence and an opportunity to evaluate the credibility of the witnesses." *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1112 (9th Cir. 2004).

Ms. Schuller alleges several causes of action based on the foregoing events: (1) retaliation in violation of Title VII, Title IX, and Washington's Law Against Discrimination (WLAD); (2) gender discrimination in violation of Title VII, Title IX, and WLAD; (3) age discrimination in violation of WLAD; (4) wrongful termination in violation of public policy; (5) violation of the Washington Equal Pay Act (WEPA); (6) breach of contract; (7) wrongful withholding of wages; (8) violation of her constitutional rights under the due process and equal protection clauses of the Fourteenth Amendment; (9) conspiracy to deprive her of her civil

ORDER ON DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT * 8

rights; and (10) intentional infliction of emotional distress. Defendants assert they are entitled to summary judgment all claims. Each is addressed in turn.

*1. Retaliation and Gender Discrimination*

Ms. Schuller contends Defendants fired her in retaliation for her Title IX reporting. She also contends her gender was a motivating factor in her termination. Defendants contend that they terminated Ms. Schuller for her poor job performance, and she cannot demonstrate specific and substantial evidence of pretext. The Court finds sufficient evidence of Ms. Hickey's discriminatory animus and retaliatory motivation to create a question of fact as to Ms. Schuller's retaliation and gender discrimination claims.

Title VII of the Civil Rights Act of 1964 prohibits consideration of "race, color, religion, sex, or national origin in employment practices." 42 U.S.C. § 2000e-2(m). Title VII further makes it "an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title[.]" 42 U.S.C. § 2000e-3(a).

Title IX of the Education Amendments of 1972 provides "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education

program or activity receiving Federal financial assistance...." 20 U.S.C. § 1681(a). "Retaliation against a person because that person has complained of sex discrimination is another form of intentional sex discrimination encompassed by Title IX's private cause of action." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173, 125 S. Ct. 1497, 1504, 161 L. Ed. 2d 361 (2005).

WLAD prohibits termination or other discrimination on the basis of age or sex, among other statuses. RCW 49.60.180. Nor may an employer retaliate against an employee "because he or she has opposed any practices forbidden by this chapter, or because he or she has filed a charge, testified, or assisted in any proceeding under this chapter." RCW 46.60.210(1).

Usually, Title VII, Title IX, and WLAD gender discrimination and retaliation claims are analyzed using the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Emeldi v. Univ. of Oregon*, 698 F.3d 715, 724 (9th Cir. 2012); *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089-90 (9th Cir. 2008); *Cornwell v. Microsoft Corp.*, 192 Wn.2d 403, 411, 430 P.3d 229 (2018).

> The analysis has three steps. The employee must first establish a prima facie case of discrimination. If he does, the employer must articulate a legitimate, nondiscriminatory reason for the challenged action. Finally, if the employer satisfies this burden, the employee must show that the reason is pretextual either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.

ORDER ON DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT * 10

*Davis*, 520 F.3d at 1090 (internal quotations omitted).

However, the *McDonnell Douglas* burden-shifting analysis is inapplicable where a plaintiff presents direct evidence of discriminatory intent or retaliatory motive. *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121, 105 S. Ct. 613, 83 L. Ed. 2d 523 (1985) (gender discrimination); *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 415 (5th Cir. 2003), *overruled on other grounds by Smith v. Xerox Corp.*, 602 F.3d 320, 330 (5th Cir. 2010) (retaliation); *Bittner v. Symetra Nat'l Life Ins. Co.*, 32 Wn. App. 2d 647, 659, 558 P.3d 177 (2024) (WLAD). Such direct evidence can alone preclude summary judgment. *France v. Johnson*, 795 F.3d 1170, 1173 (9th Cir. 2015); *Bittner*, 32 Wn. App. 2d at 668. Clearly sexist statements or actions by an employer, even where not directed towards the plaintiff, suffice to demonstrate direct evidence of a discriminatory intent behind an employee's termination. *Coghlan v. Am. Seafoods Co. LLC.*, 413 F.3d 1090, 1095 n.6 (9th Cir. 2005).

Construing the record in a light most favorable to her as the non-moving party, Ms. Schuller has presented sufficient direct evidence of Defendants' discriminatory intent or retaliatory motive for her termination to preclude summary judgment on her retaliation and gender discrimination claims. The record contains evidence of Ms. Hickey expressing animus towards women and employing gender stereotypes in the workplace. Ms. Hickey's reference to Title IX reporting as

ORDER ON DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT * 11

"gossip" and her invocation of "gossiping" in the draft performance evaluation she created to justify Ms. Schuller's termination is also direct evidence of a retaliatory motive.

Because the record contains direct evidence of discriminatory intent or a retaliatory motive for her termination, Ms. Schuller does not need to show Defendants' legitimate, non-retaliatory reasons for its actions are pretextual to survive summary judgment. It is a question for the jury to decide Defendants' true motivation.

Even if the *McDonnell Douglas* framework applied, the evidence of discriminatory intent and retaliatory motive creates a question of fact as to Ms. Schuller's retaliation and gender discrimination claims.

Under Title VII, Title IX, and WLAD, a *prima facie* retaliation claim requires a showing that (1) the employee engaged in a protected activity; (2) she suffered an adverse employment action; and (3) there was a causal link between the protected activity and the adverse employment action. *Davis*, 520 F.3d at 1093-94 (Title VII); *Cornwell*, 192 Wn.2d at 411 (WLAD). It is undisputed Ms. Schuller engaged in protected activity and suffered an adverse employment action. The above evidence of discriminatory intent and retaliatory motive demonstrates a causal link between the protected activity and the adverse employment action.

ORDER ON DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT * 12

1      A *prima facie* Title VII and IX employment gender discrimination claim

2   requires a showing that (1) the employee belongs to a statutorily protected class;

3   (2) the employee performed her job satisfactorily; (3) the employee suffered an

4   adverse employment action; and (4) similarly situated individuals outside the

5   employee's protected class were treated more favorably, or other circumstances

6   surrounding the adverse employment action that give rise to an inference of

7   discrimination. *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir.

8   2004). Under the WLAD, a *prima facie* gender discrimination case only requires a

9   showing of the first three of the above elements. *Crabtree v. Jefferson County Pub.*

10  *Hosp. Dist. No. 2*, 20 Wn. App. 2d 493, 508, 500 P.3d 203 (2021).

11     It is undisputed Ms. Schuller belongs to a protected class and suffered an

12  adverse employment action. While the parties dispute whether Ms. Schuller

13  performed satisfactory work, Ms. Schuller has made a sufficient showing

14  concerning Defendants' expectations of her so as to create a question of fact. *See*

15  *Calloway v. Univ. of S.C.*, 2022 WL 2230084, at *6 (D. S.C. June 1, 2022)

16  (university's failure to express dissatisfaction with coach's losing record prior to

17  termination gave rise to question of fact as to satisfactory job performance); *see*

18  *also Kenny v. Univ. of Delaware*, 2019 WL 5865595, at *4 (D. Del. Nov. 8, 2019)

19  (Subjective factors, such as the athletic director's expectations for team

20  performance and coach behavior, better left to the later stage of the *McDonnell*

*Douglas* analysis because they are more susceptible of abuse and more likely to mask pretext.). The aforementioned evidence of discriminatory intent and retaliatory motive demonstrates circumstances giving rise to an inference of discrimination.

Defendants proffer a legitimate, non-discriminatory reason for Ms. Schuller's termination (the poor performance of her team and dissatisfaction of athletes), shifting the burden to Ms. Schuller to demonstrate pretext. Direct evidence of discriminatory animus is sufficient to create a question of fact as to pretext. *Lindahl v. Air France*, 930 F.2d 1434, 1438 (9th Cir. 1991). Again, the evidence of discriminatory intent and retaliatory motive creates a question of fact as to pretext.

Summary judgment is not appropriate on Ms. Schuller's retaliation and gender discrimination claims under Title VII, IX, and WLAD as there are genuine issues of material fact concerning Defendants motivations behind Ms. Schuller's termination.

*2. Age Discrimination*

In addition to her WLAD gender discrimination claim, Ms. Schuller asserts an age discrimination claim under WLAD. Unlike her gender discrimination claim, the Court finds insufficient evidence of age discrimination to create a genuine issue of fact.

ORDER ON DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT * 14

1    The *McDonnell Douglas* burden-shifting framework again applies to WLAD

2   age discrimination claims. *Scrivener v. Clark Coll.*, 181 Wn.2d 439, 446, 334 P.3d

3   541 (2014).

4    "To establish a prima facie case of age discrimination in employment, the

5   employee must show: (1) she was within the statutorily protected age group of

6   employees 40 years of age or older, (2) she was discharged, (3) she was doing

7   satisfactory work, and (4) she was replaced by a significantly younger person."

8   *Becker v. Washington State Univ.*, 165 Wn. App. 235, 252, 266 P.3d 893 (2011). If

9   the employee is successful in carrying her burden, the employer must show a

10  legitimate, non-discriminatory reason for its conduct. *Id.* "If the employer meets its

11  burden of production, the employee must then show the employer's proffered

12  reason was mere pretext for discrimination." *Id.*

13   Ms. Schuller has not demonstrated a *prima facie* age discrimination case. It

14  is undisputed Ms. Schuller was replaced by a coach who was also over the age of

15  40. Nor has Ms. Schuller produced evidence of age discrimination sufficient to

16  avoid the application of the *McDonnell Douglas* analysis or demonstrate pretext.

17   Ms. Schuller offers the following evidence of age discrimination. When

18  discussing the two candidates to replace Ms. Schuller, Ms. Hickey remarked that

19  Ms. Patterson needed "to get a little selfish or her age will soon stop her having

20  another opportunity," and Ms. Ezell was a "great young coach." Ms. Hickey then

1    wanted to offer Ms. Ezell a higher salary than EWU paid Ms. Schuller. Ms. Hickey

2    also referred to Ms. Schuller's "frustration and exhaustion" in the draft

3    performance evaluation. Finally, Ms. Schuller argues Defendants failure to

4    terminate the younger Women's Volleyball Coach despite the allegations of

5    misconduct against her constitutes disparate treatment.

6        This evidence, read alone or together, is insufficient to create a question of

7    fact as to age discrimination. Ms. Hickey's comments referencing the age of Ms.

8    Patterson and Ms. Ezell are benign and do not indicate discriminatory animus. The

9    higher salary offered to Ms. Ezell only creates a very weak and insubstantial

10   inference of age discrimination at best. Likewise, Ms. Schuller's claim that the

11   reference to her "frustration and exhaustion" refers to her age is strongly

12   inferential. Finally, the EWU Women's Volleyball coach's situation does not

13   support Ms. Schuller's age discrimination claims, as even from the limited record

14   presented the circumstances of her resignation are too different from Ms.

15   Schuller's termination to provide anything but the weakest inference of age

16   discrimination.

17       Even viewing the evidence in a light most favorable to Ms. Schuller, no

18   reasonable jury could find she was discriminated against based on her age.

19   Defendants are entitled to summary judgment on her WLAD age discrimination

20   claim.

ORDER ON DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT * 16

*3. Wrongful Termination in Violation of Public Policy*

In addition to her Title VII, Title XI, and WLAD claims for retaliation, gender discrimination, and age discrimination, Ms. Schuller advances a state law claim for wrongful termination in violation of public policy based on the same underlying facts.

The Washington tort of wrongful termination in violation of public policy is an exception to the general rule that an at-will employee can be terminated for any reason. *Hollenback v. Shriners Hosps. for Child.*, 149 Wn. App. 810, 825, 206 P.3d 337 (2009). "This tort applies when an employer discharges an employee for reasons contrary to public policy." *Id*. The WLAD articulates strong public policy against gender discrimination, which may be the basis for a wrongful termination in violation of public policy claim. *Roberts v. Dudley*, 140 Wn.2d 58, 72, 993 P.2d 901 (2000).

To survive summary judgment by an employer, an employee must make two showings. *Martin v. Gonzaga Univ.*, 191 Wn.2d 712, 725, 425 P.3d 837 (2018). First, that the termination may have been motivated by reasons that contravene a clear mandate of public policy. *Id*. Second, that the public policy linked conduct was a significant factor in the decision to terminate. *Id*.

Gender discrimination, age discrimination, and retaliation all contravene a clear mandate of public policy as expressed by WLAD, satisfying the first element

ORDER ON DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT * 17

of Ms. Schuller's wrongful termination in violation of public policy claim. As
discussed above, Ms. Schuller produced sufficient evidence of discriminatory
animus and retaliatory motive to create a question of fact as to gender
discrimination and retaliation. For that reason, she has demonstrated the second
element of her wrongful termination in violation of public policy claim with
regards to gender discrimination and retaliation. However, as has also been
discussed, Ms. Schuller has failed to demonstrate a genuine issue of fact as to age
discrimination.

Summary judgment is denied on Ms. Schuller's wrongful termination in
violation of public policy claim for gender discrimination and retaliation, but
granted to the extent her claim is based on a theory of age discrimination.

*4. Washington Equal Pay Act*

Ms. Schuller contends EWU violated the WEPA by paying her less than her
male counterpart on the EWU Men's Basketball team, Mr. Legans. Defendants
argue Ms. Schuller did not perform equal work to Mr. Legans, and therefore the
WEPA does not apply. The Court finds questions of fact precluding summary
judgment as to whether Ms. Schuller and Mr. Legans performed equal work, and
whether the coaches' wage disparity was based on factors other than gender.

Under the WEPA, an employer may not discriminate based on gender in
providing compensation between similarly employed employees. RCW

ORDER ON DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT * 18

49.58.020(1). "For purposes of [the WEPA], employees are similarly employed if the individuals work for the same employer, the performance of the job requires similar skill, effort, and responsibility, and the jobs are performed under similar working conditions." RCW 49.58.020(2). Discrimination under the WEPA does not include different compensation based in good faith on a bona fide job-related factor that is consistent with business necessity, is not based on or derived from a gender-based differential, and accounts for the entire differential. RCW 49.58.020(3).

As the WEPA is virtually identical to the Federal Equal Pay Act, 29 U.S.C. § 206(d), Washington courts look to federal decisions interpreting that act when applying the WEPA. *Hudon v. W. Valley Sch. Dist. No. 208*, 123 Wn. App. 116, 124, 97 P.3d 39 (2004).

"A plaintiff states a prima facie case under the equal pay act by proving that men and women received different pay for equal work." *Id*. "Once the prima facie case is established, the burden shifts to the employer to prove that . . . the wage disparity is 'based in good faith on a factor or factors other than sex.'" *Id*. (quoting former RCW 49.12.175). "[W]hether the employer relied on a factor other than sex is usually a question of fact." *Id*.

"The crucial finding on the equal work issue is whether the jobs to be compared have a common core of tasks, i.e. whether a significant portion of the

ORDER ON DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT * 19

two jobs is identical." *Stanley v. Univ. of S. California*, 178 F.3d 1069, 1074 (9th Cir. 1999). "When a plaintiff establishes such a common core of tasks, the court must then determine whether any additional tasks, incumbent on one job but not the other, make the two jobs substantially different." *Id*. (quotations omitted).

It is undisputed that Ms. Schuller received less pay than Mr. Legans. As Ms. Hickey conceded at her deposition, there are questions of fact as to whether the two coaches' jobs are equal. While Defendants assert Mr. Legans had additional media responsibilities, whether these responsibilities make the two coaching positions unequal is a question of fact for the jury.

Ms. Schuller has demonstrated her *prima facie* case. Therefore, to be entitled to summary judgment, Defendants must show the wage disparity is based on factors other than sex. Here too the Court finds sufficient evidence in the record to create a question of fact. The Court denies summary judgment on Ms. Schuller's WEPA claim.

*5. Breach of Contract*

Ms. Schuller contends Defendants breached her contract by terminating her without cause. Defendants move for summary judgment on the basis of the termination for-convenience clause in her contract. The Court agrees Ms. Schuller's contract permitted Defendants to terminate her contract without cause, and grants Defendants summary judgment on this claim.

ORDER ON DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT * 20

To state a claim for breach of contract under Washington law, a plaintiff must plausibly allege (1) the existence of a valid contract; (2) breach of a duty imposed by that contract; and (3) damages resulting from the breach. *Nw. Indep. Forest Mfrs. v. Dep't of Labor & Indus.*, 78 Wn. App. 707, 712, 899 P.2d 6 (1995).

Contract interpretation is generally a question of law. *Viking Bank v. Firgrove Commons 3, LLC*, 183 Wn. App. 706, 711, 334 P.3d 116 (2014). "Washington follows the 'objective manifestation theory' of contract interpretation, under which the focus is on the reasonable meaning of the contract language to determine the parties' intent." *Id*. Extrinsic evidence may not be used to contradict a contract's unambiguous written terms or show an intent independent of the contract, but may be used to aid the trial court in interpreting what is contained in the contract. *Paradise Orchards Gen. P'ship v. Fearing*, 122 Wn. App. 507, 517, 94 P.3d 372 (2004).

Here, Ms. Schuller's contract was unambiguous. It provided that she could be "terminated for convenience without cause, with the approval of the President, written notice to the employee, accompanied by the payment of six months' salary." Ms. Schuller's claim that the parties never intended the contract to provide for termination without cause is contradicted by the contract's plain language. As the contract's clear written terms granted Defendants the option to terminate her without cause, Ms. Schuller may not use extrinsic evidence, such as university

ORDER ON DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT * 21

1  policy, verbal assurances, or the parties conduct, to contradict these terms or

2  demonstrate an intent independent of the contract.

3       At oral argument, Ms. Schuller argued the parties entered into an oral

4  modification of the contract to clarify that she would not be terminated without

5  cause. However, the record does not contain evidentiary support demonstrating a

6  contract modification, and Ms. Schuller does not identify the additional

7  consideration Washington law requires for the modification of an existing contract.

8  *See Boardman v. Dorsett*, 38 Wn. App. 338, 341, 685 P.2d 615 (1984). As such,

9  there is no genuine dispute of fact as to a subsequent oral modification.

10      Ms. Schuller fails to demonstrate Defendants breached a contractual duty by

11 terminating her without cause, and Defendants are entitled to summary judgment

12 on her breach of contract claim.

13 *6. Wrongful Withholding of Wages*

14      In addition to claiming damages for breach of contract, Ms. Schuller

15 contends Defendants wrongfully withheld her wages after terminating her without

16 cause.

17      Washington law provides a cause of action against any employer and its

18 officers or agents who willfully and with the intent to deprive the employee of any

19 part of her wages, pays the employee a lower wage than obligated. RCW

20 49.52.050, .070. A failure to pay wages as obligated is not intentional where a bona

ORDER ON DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT * 22

1   fide dispute as to pay exists. *Pope v. Univ. of Washington*, 121 Wn.2d 479, 491

2   n.4, 852 P.2d 1055 (1993). A "bona fide" dispute is a "fairly debatable" dispute

3   over whether all or a portion of the wages must be paid. *Schilling v. Radio*

4   *Holdings, Inc.*, 136 Wn.2d 152, 161, 961 P.2d 371 (1998).

5       As discussed above, Ms. Schuller's contract permitted Defendants to

6   terminate her without cause. There is no genuine dispute Defendants paid Ms.

7   Schuller the wages she was entitled to. While Ms. Schuller disputes whether she

8   could be terminated without cause, this constitutes a bona fide dispute over

9   whether Defendants were obligated to pay her. Defendants are entitled to summary

10  judgment on Ms. Schuller's wrongful withholding of wages claim.

11  *7. § 1983 Claims*

12      Ms. Schuller advances 42 U.S.C. § 1983 claims for the violation of her

13  constitutional rights under the Fourteenth Amendment. She advances one claim for

14  violation of her procedural due process rights based on EWU's termination of her

15  without cause. She also advances a claim for violation of her rights under the equal

16  protection clause based on EWU's gender discrimination. Defendants move for

17  summary judgment on Ms. Schuller's procedural due process claim, and assert Ms.

18  Hickey is entitled to qualified immunity. They have not moved for summary

19  judgment on Ms. Schuller's equal protection claim.

20      The Fourteenth Amendment protects individuals against the
        deprivation of liberty or property by the government without due

ORDER ON DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT * 23

process. A section 1983 claim based upon procedural due process thus has three elements: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (3) lack of process. The Due Process Clause does not create substantive rights in property; the property rights are defined by reference to state law.

*Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993). "A government employee has a constitutionally protected property interest in continued employment when the employee has a legitimate claim of entitlement to the job." *Id*. "If under state law, employment is at-will, then the claimant has no property interest in the job." *Id*.

Under Washington law, an at-will employee is one who can be terminated for any reason. *Gardner v. Loomis Armored Inc.*, 128 Wn.2d 931, 935, 913 P.2d 377 (1996).

Ms. Schuller's contract provided that she could be terminated for convenience without cause, i.e., for any reason. Therefore, Ms. Schuller was an at-will employee without a constitutionally protected property interest in her employment. Because Ms. Schuller was an at-will employee, Defendants did not violate her procedural due process rights by terminating her without cause. Additionally, as Ms. Schuller has not demonstrated Ms. Hickey violated a clearly established constitutional right to procedural due process, Ms. Hickey is entitled to qualified immunity. Defendants are entitled to summary judgment on Ms. Schuller's § 1983 procedural due process claim.

ORDER ON DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT * 24

However, Ms. Schuller's § 1983 equal protection claim survives dismissal because Defendants have not moved for summary judgment upon it.

### 8. § 1985(3) Claim

In her complaint, Ms. Schuller asserts a claim for conspiracy to violate her civil rights under 42 U.S.C. § 1985(3). Defendants argue, and Ms. Schuller now concedes, this claim is not legally viable as Ms. Schuller lacks evidence of two or more people involved in a conspiracy. *See Hunter v. Ferebauer*, 980 F. Supp. 2d 1251, 1261 (E.D. Wash. 2013). The Court agrees, and grants Defendants summary judgment on this claim.

### 9. Intentional Infliction of Emotional Distress

Finally, Ms. Schuller asserts a state law claim for intentional infliction of emotional distress in her complaint. Defendants argue, and Ms. Schuller again concedes, that their behavior was insufficiently extreme and outrageous for Ms. Schuller to demonstrate a *prima facie* case. *Repin v. State*, 198 Wn. App. 243, 265-66, 392 P.3d 1174 (2017). The Court accepts Ms. Schuller's concession, and grants Defendants summary judgment on this claim.

**ACCORDINGLY, IT IS HEREYBY ORDERED:**

1. Defendants' Motion for Summary Judgment, **ECF No. 46** is **GRANTED in part** and **DENIED in part**.

2. The following claims against Defendants are **DISMISSED with prejudice**:

ORDER ON DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT * 25

    a.  Age discrimination under WLAD, ch. 49.60 RCW;

    b.  Public policy wrongful termination, to the extent it is based on allegations of age discrimination;

    c.  Breach of contract;

    d.  42 U.S.C. § 1983 claim for violation of Ms. Schuller's procedural due process rights;

    e.  Wrongful withholding of wages;

    f.  Conspiracy to deprive Ms. Schuller of her civil rights under 42 U.S.C. § 1985(3); and

    g.  Intentional infliction of emotional distress.

3. On or before March 7, 2025 the parties shall contact the courtroom deputy at linda_hansen@waed.uscourts.gov to schedule a video status conference. The parties shall confer in advance of the status conference and be prepared to discuss the following issues:

    a.  A preferred trial date and estimated length of trial.

    b.  Whether this matter should be referred for mediation.

    c.  The following deadline dates will be outlined in an order after the status conference. Be prepared to discuss these deadlines if there are any changes:

    Hearing Request re deposition designations: 42 days before trial

ORDER ON DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT * 26

| | |
|---|---|
| Cross designations: | 28 days before trial |
| Objections to designations: | 21 days before trial |
| Exhibit/Witness lists: | 35 days before trial |
| Objections to Exhibit/Witness lists: | 28 days before trial |
| Response to Exhibit/Witness objections: | 21 days before trial |
| Motions in Limine: | 42 days before trial |
| Response to Motions in Limine: | 36 days before trial |
| Replies to Motions in Limine: | 28 days before trial |
| Pretrial Order: | 21 days before trial |
| Trial Briefs, voir dire: | 25 days before trial |
| Jury Instructions (Agreed/Disputed): | 25 days before trial |
| Memo object to disputed Jury Instructions: | 25 days before trial |
| Pretrial Conference/Motion in Limine Hrg: | 14 days before trial |

**IT IS SO ORDERED.**

The District Court Executive is directed to enter this Order and forward copies to the parties.

DATED February 27, 2025.



_____
Rebecca L. Pennell
United States District Judge

ORDER ON DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT * 27